United States Court of Appeals
for the Fourth Circuit
No. 19-4392

_____

United States,
Appellee,
v.

Eric Grinder,
Appellant.

_____

Appeal from the United States District Court
for the District of Maryland
No. 1:17-cr-00226-CCB-1

_____

**Appellant's Opening Brief**


James Wyda
Federal Public Defender

Cullen Macbeth
Assistant Federal Public Defender
100 S. Charles Street
Tower II, 9th Floor
Baltimore, MD
(410) 962-3962
cullen_macbeth@fd.org

Counsel for Appellant

# Table of Contents

Jurisdictional Statement ........................................................................ 1

Issues Presented ................................................................................... 2

Statement of the Case ........................................................................... 2

    A. Application for state warrant ................................................... 2

    B. Issuance of the state warrant .................................................. 5

    C. Execution of the state warrant ............................................... 6

    D. Federal search warrants ......................................................... 7

    E. Indictment and motion to suppress ....................................... 9

    F. Motion to reconsider ............................................................ 12

    G. Trial and sentencing ............................................................. 12

Summary of the Argument .................................................................. 13

Argument ............................................................................................ 16

  I. The state warrant was overbroad because the supporting
    affidavit did not demonstrate probable cause to seize Mr.
    Grinder's cell phone or laptop from his home. ........................... 16

    A. Standard of review ................................................................ 16

    B. Argument .............................................................................. 16

      1. Legal background ............................................................. 16

      2. The state warrant was not supported by probable
        cause to search Mr. Grinder's home for his cell phone
        and laptop. ...................................................................... 18

      3. The good faith exception does not apply. ........................ 25

  II. A full-scale forensic examination of Mr. Grinder's laptop
    was beyond the scope of the state warrant. ................................. 26

    A. Standard of review ................................................................ 27

i

B.  Argument ........................................................................ 27

1.  Police may search only those parts of a computer likely to contain the items for which probable cause exists. ................................................................................. 27

2.  The initial forensic examination of Mr. Grinder's laptop exceeded the scope of the state warrant. .............. 33

3.  This Court's opinion in *Williams* does not govern this case. ............................................................................... 37

4.  The good faith exception does not apply. ........................ 45

III. The federal warrants were tainted by evidence illegally obtained from the initial examination of Mr. Grinder's laptop. .................................................................................. 47

A.  Standard of review .................................................................. 48

B.  Legal background .................................................................... 48

C.  Argument ................................................................................. 49

1.  The government has waived its right to argue that the independent source doctrine applies. ................................ 49

2.  The images illegally seized from Mr. Grinder's laptop affected investigators' decision to seek the federal warrants. ............................................................................. 51

3.  Stripped of the illegally seized images, Agent Federico's affidavit does not establish probable cause to search Mr. Grinder's laptop. .......................................... 56

4.  The good faith exception does not apply. ........................ 58

IV. The government's four-month delay in obtaining the federal warrant for Mr. Grinder's cell phone was unreasonable. .......... 59

A.  Standard of review .................................................................. 59

B.  Argument ................................................................................. 59

Conclusion ................................................................................... 62

Statement Regarding Oral Argument ...................................... 64

Certificate of Compliance .......................................................... 66

Certificate of Service ................................................................. 66

# Table of Authorities

**Federal Cases**

*Andresen v. Maryland*, 427 U.S. 463 (1976).................................................... 43, 44

*Archer v. Chisholm*, 870 F.3d 603 (7th Cir. 2017) ......................................... 30, 31

*Buonocore v. Harris*, 65 F.3d 347 (4th Cir. 1995) ...............................................47

*Cupp v. Murphy*, 412 U.S. 291 (1973) .................................................................59

*Holland v. Big River Minerals Corp.*, 181 F.3d 597 (4th Cir. 1999) ....................51

*Horton v. California*, 496 U.S. 128 (1990)................................................ 31, 36, 42

*In re Grand Jury Subpoenas Dated Dec. 10, 1987*, 926 F.2d 847
  (9th Cir. 1991) ..................................................................................................17

*Kentucky v. King*, 563 U.S. 452 (2011) .................................................................48

*Maryland v. Garrison*, 480 U.S. 79 (1987) ..................................................... 31, 36

*Riley v. California*, 573 U.S. 373 (2014) ......................................................... 18, 22

*United States v. Angelos*, 433 F.3d 738 (10th Cir. 2006).....................................46

*United States v. Burgess*, 576 F.3d 1078 (10th Cir. 2009)....................... 32, 33, 36

*United States v. Campbell*, 945 F.2d 713 (4th Cir. 1991) .............................. 49, 50

*United States v. Cano*, --- F.3d ---, 2019 WL 3850607
  (9th Cir. Aug. 16, 2019)...................................................................................29

*United States v. Christie*, 717 F.3d 1156 (10th Cir. 2013).............................. 28, 30

*United States v. Comprehensive Drug Testing, Inc.*,
  621 F.3d 1162 (9th Cir. 2010)...........................................................29

*United States v. Curzi*, 867 F.2d 36 (1st Cir. 1989) ...............................46

*United States v. Dargan*, 738 F.3d 643 (4th Cir. 2013) ..........................27

*United States v. Doyle*, 650 F.3d 460 (4th Cir. 2011) ..................... passim

*United States v. Drummond*, 925 F.3d 681 (4th Cir. 2019) ...............16

*United States v. Evers*, 669 F.3d 645 (6th Cir. 2012)...............................32

*United States v. Ewain*, 88 F.3d 689 (9th Cir. 1996) ..............................46

*United States v. Galpin*, 720 F.3d 436 (2d Cir. 2013)...........................29

*United States v. Gourde*, 440 F.3d 1065 (9th Cir. 2006)........................56

*United States v. Griffith*, 867 F.3d 1265 (D.C. Cir. 2017) .......... passim

*United States v. Hill*, 459 F.3d 966 (9th Cir. 2006) ...............................28

*United States v. Hitchcock*, 286 F.3d 1064 (9th Cir. 2002)...................33

*United States v. Holtzclaw*, 2018 WL 3128999 (M.D.N.C. June 26, 2018) ........23

*United States v. Hurwitz*, 459 F.3d 463 (4th Cir. 2006).......................18

*United States v. Jackson*, 2018 WL 2220277 (E.D. Mich. May 15, 2018) ..........24

*United States v. Kimble*, 855 F.3d 604 (4th Cir. 2017) .........................27

*United States v. Lalor*, 996 F.2d 1578 (4th Cir. 1993) ................... 17, 20

*United States v. Leon*, 468 U.S. 897 (1984)..................................... 45, 46

*United States v. Loera*, 923 F.3d 907 (10th Cir. 2019)................................. passim

*United States v. Long*, 797 F.3d 558 (8th Cir. 2015) .............................................46

*United States v. Lull*, 824 F.3d 109 (4th Cir. 2016) ...............................................17

*United States v. Mann*, 592 F.3d 779 (7th Cir. 2010)............................................32

*United States v. McLamb*, 880 F.3d 685 (4th Cir. 2018) ......................................25

*United States v. Moussaoui*, 483 F.3d 220 (4th Cir. 2007)....................................51

*United States v. Mowatt*, 513 F.3d 395 (4th Cir. 2008)............................... passim

*United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents*, 307 F.3d 137 (3d Cir. 2002)......................................... 17, 24

*United States v. Perez*, 393 F.3d 457 (4th Cir. 2004)..................................... 16, 47

*United States v. Phillips*, 588 F.3d 218 (4th Cir. 2009) .................................. 27, 37

*United States v. Pratt*, 915 F.3d 266 (4th Cir. 2019) .................................. passim

*United States v. Richards*, 659 F.3d 527 (6th Cir. 2011) ......................... 29, 30, 43

*United States v. Riesselman*, 646 F.3d 1072 (8th Cir. 2011) ...............................33

*United States v. Ross*, 456 U.S. 798 (1982) ..................................................... 31, 43

*United States v. Seerden*, 916 F.3d 360 (4th Cir. 2019) ........................................16

*United States v. Srivastava*, 540 F.3d 277 (4th Cir. 2008)....................... 27, 32, 34

*United States v. Stabile*, 633 F.3d 219 (3d Cir. 2011) .................................... 29, 33

*United States v. Stephens*, 764 F.3d 327 (4th Cir. 2014) ......................................24

*United States v. Summage*, 481 F.3d 1075 (8th Cir. 2007)...................................43

*United States v. Thomas*, 908 F.3d 68 (4th Cir. 2018) ...........................................25

*United States v. Walton*, 56 F.3d 551 (4th Cir. 1995)................................... 57, 58

*United States v. Weber*, 923 F.2d 1338 (9th Cir. 1990) ........................................18

*United States v. Wienke*, 733 F. App'x 65 (4th Cir. 2018) ...................................17

*United States v. Williams*, 592 F.3d 511 (4th Cir. 2010) ...........................passim

*Utah v. Strieff*, 136 S. Ct. 2056 (2016) ...................................................................48

*Wyoming v. Houghton*, 526 U.S. 295 (1999) .........................................................17

## Federal Statutes

18 U.S.C. § 2251(a) .........................................................................................................8

18 U.S.C. § 2252(a)(4)(B) ...............................................................................................8

18 U.S.C. § 2256...............................................................................................................8

18 U.S.C. § 3231...............................................................................................................1

18 U.S.C. § 3742...............................................................................................................1

28 U.S.C. § 1291...............................................................................................................1

## State Statutes

Va. Code Ann. § 18.2–152.7:1 ......................................................................................39

## Jurisdictional Statement

The district court had jurisdiction over this criminal case under 18

U.S.C. § 3231.  The court entered judgment on May 24, 2019, sentencing

Appellant Eric Grinder to 30 years in prison and a lifetime of supervised

release.  J.A. 820-23.[1]

Mr. Grinder filed a timely notice of appeal on May 31, 2019.  J.A. 828.

This Court's jurisdiction arises under 28 U.S.C. § 1291.

---

[1] The Joint Appendix is cited as "J.A.," followed by the page number.
The Sealed Joint Appendix is cited as "S.J.A.," followed by the page
number.

1

## Issues Presented

1. Whether a warrant authorizing police to seize any and all cell phones from Mr. Grinder's home was overbroad, where police had reason to believe Mr. Grinder and his phone were not at the home.

2. Whether investigators exceeded the scope of a warrant for Mr. Grinder's laptop by searching in the computer's files for evidence that would be found only in his internet browser's search history.

3. Whether the follow-up warrants for Mr. Grinder's laptop and cell phone were an "independent source" of the evidence against him, where images illegally seized from his laptop motivated investigators' decision to seek those warrants.

4. Whether investigators unreasonably waited four months to obtain a follow-up warrant for Mr. Grinder's cell phone.

## Statement of the Case

### A.  Application for state warrant

On November 29, 2016, Detective John Emminizer of the Westminster

City Police Department and Master Trooper Danielle Barry of the

Maryland State Police submitted an application for a search warrant to a

Maryland state judge.  S.J.A. 1-5.  The application asserted probable cause

to believe officers would find evidence of five crimes—child abuse of a

minor, second-degree rape, sexual offense in the second degree, sexual

offense in the third degree, and sexual abuse of a minor — in Mr. Grinder's home, where he lived with his wife, Alesha Grinder ("Alesha"), and their ten-year-old daughter, Jane Doe.[2]  S.J.A. 1.

The affiants alleged that on the evening of November 27, 2016, Jane Doe told Alesha that Mr. Grinder, who was Jane Doe's adoptive father, "ha[d] been sexually abusing her."  S.J.A. 2.  During an interview with the Carroll County Advocacy and Investigation Center on the morning of November 28th, Jane Doe reportedly said the abuse began when she was eight years old and last occurred about a week previously.  S.J.A. 2-3.  She alleged that on several occasions, Mr. Grinder touched her vagina with his hand and his penis, penetrated her vagina with his penis, and "pushed her mouth to his [penis] and put it in her mouth."  S.J.A. 3.  Jane Doe also said that Alesha and Mr. Grinder sometimes gave her cough medicine at night, which made her sleepy.  S.J.A. 3.

According to the affidavit, Alesha reported that to treat her insomnia, she takes Clonazelam, a "Benzodiazepine class of drug" that Mr. Grinder

---

[2] Below, the parties used various pseudonyms to refer to the victim in this case, who is a minor.  Mr. Grinder refers to her in this brief as Jane Doe.

"orders . . . via the Internet and has[] sent to the house." S.J.A. 3. Alesha told police that on the night of the 27th, after learning of Jane Doe's allegations, she observed Jane Doe to be "tired and barely responsive." S.J.A. 3. She then tasted the Robitussin in a bottle in Jane Doe's room, which she "assumed [Mr. Grinder] had just given [to Jane Doe]," and determined that it tasted like Clonazelam. S.J.A. 3. A "home drug testing kit," administered the next morning, "indicated [Jane Doe] tested positive for Benzodiazepines." S.J.A. 4. In addition, Alesha told investigators that after she injured her back two weeks previously, Mr. Grinder had offered her a powdery substance called U-771 to treat the pain. S.J.A. 4.

The affidavit asserted that on the afternoon of November 28th, Alesha informed Mr. Grinder of Jane Doe's allegations, which Mr. Grinder denied. S.J.A. 4. She told police that Mr. Grinder then "left the house and she currently does not know where he is." S.J.A. 4. In a series of text messages beginning around that time, Alesha again accused Mr. Grinder of abusing Jane Doe, and Mr. Grinder again denied the accusations. S.J.A. 4. When Alesha urged Mr. Grinder to "come home," he responded, "Come home with a controlled substance I bought for you that I'll get in trouble for." S.J.A. 4.

4

### B.    Issuance of the state warrant

At 6:15 p.m. on November 29th, a Maryland state judge signed a

warrant ("the state warrant") finding probable cause to believe that Mr.

Grinder's home, located at 261 Montpelier Court in Westminster,

Maryland, contained evidence of the five sex crimes enumerated in the

application.  S.J.A. 7.  The state warrant described the items to be seized as

follows:

> evidence relating to the crimes of Sex Abuse of a Minor, 2nd
> Degree Sexual Offense, 3rd Degree Sexual Offense, Rape 2nd
> Degree, Sex Abuse of a Minor-Continuing Course of Conduct,
> to include but not limited to crime scene processing; to include
> photographs, drawings/measurements, DNA/Biological
> evidence collection; bedding, prescription and non-prescription
> medication to include but not limited to Clonazelam and U-771,
> home drug testing kits, invoices/receipts for mail order
> medications, cell phones, computers, hard drives, media
> storage devices, etc.

S.J.A. 6.

Among other things, the state warrant authorized officers to:

- "[e]nter and search the residence as completely described above
  for evidence of the aforementioned crimes to include the
  curtilage";

- "[s]eize all evidence found in or upon said premises and its
  curtilage";

- "[s]eize and have forensically analyzed by a qualified person or
  persons any cellular telephones seized"; and

- "[s]eize and have forensically analyzed by a qualified person or persons any computers, hard drives, [and] media storage devices."

S.J.A. 6-7.

### C. Execution of the state warrant

Michael Lare, a corporal with the Carroll County Sheriff's Office, arrived at Mr. Grinder's home at 5:06 p.m. on the 29th, while the state judge was still reviewing the warrant application. J.A. 94-95, 100-01. After knocking on the front door and receiving no answer, Corporal Lare lingered on the front porch, waiting for detectives and crime scene technicians to show up. J.A. 102. Mr. Grinder pulled up in a car at 5:56 p.m. and parked in the driveway. J.A. 103. As Mr. Grinder stepped out of the car, Corporal Lare approached, identified himself, explained that he was there to execute a search warrant, and asked for Mr. Grinder's house keys and cell phone, which he said would be subject to the warrant. J.A. 103. Mr. Grinder relinquished his keys, reached into the car to retrieve his phone from the center console, and handed the phone to Corporal Lare. J.A. 104.

Deputy David Roys of the Carroll County Sheriff's Office arrived around 6:05 p.m. to begin executing the state warrant. J.A. 105-06. Among the items officers seized from the house was a Toshiba laptop. S.J.A. 16.

6

### D.    Federal search warrants

On December 19, 2016, state police handed over Mr. Grinder's cell phone and laptop to members of Homeland Security Investigations (HSI), a branch of the federal Department of Homeland Security.  J.A. 221.  HSI investigators did nothing with those devices until February 7, 2017, when a "forensic analyst" "imaged" the laptop.  J.A. 221.  During an examination of the laptop on February 16, 2017, the analyst discovered what he believed to be images of Jane Doe performing fellatio on an adult male and touching an adult male's penis.  J.A. 221; S.J.A. 16.  He also discovered "two known images of child pornography," which he recognized from previous investigations into child exploitation.  S.J.A. 16.  The investigator then suspended his examination of the laptop.  S.J.A. 17.

On March 16, 2017, investigators asked Jane Doe's aunt to look at a "sanitized" image from the laptop that, investigators believed, depicted Jane Doe.  S.J.A. 17.  She confirmed that the child in the image was her niece.  S.J.A. 17.

On March 17, 2017, HSI Special Agent Richard Federico submitted an application for search warrants to a federal magistrate judge in the District of Maryland.  S.J.A. 19.  The application recounted the sexual-abuse

7

allegations from the state warrant affidavit, the November 29th search of

Mr. Grinder's home, and the HSI forensic analyst's subsequent

examination of the laptop, including his discovery of suspected images of

child pornography.  S.J.A. 13-17.  The application further alleged that: (1) in

a December 2, 2016 follow-up interview with police, Alesha reported that

Jane Doe said Mr. Grinder had "used his cell phone to videotape [Jane Doe]

performing oral sex on [Mr. Grinder] and then 'put it on the TV'"; (2) a

December 16, 2016 medical exam of Jane Doe revealed "indications of a

history of sexual abuse, including the child's absence of her posterior

hymen, which was diagnostic of prior penetrating trauma to the vagina."

S.J.A. 16.

　　Based on this information, Agent Federico sought authorization to

search Mr. Grinder's cell phone and the laptop for evidence of production,

receipt, and possession of child pornography.  S.J.A. 9.  The magistrate

judge issued warrants for those devices ("the federal warrants") on the

afternoon of March 17th.  S.J.A. 64-75.

　　Acting pursuant to the federal warrants, the HSI analyst conducted a

further examination of Mr. Grinder's laptop, his cell phone, and the SD

8

card within the phone.  *See* J.A. 352-53.  That search revealed images of child pornography on all three devices.  J.A. 356, 384-87, 399-405, 412-33.

### E.    Indictment and motion to suppress

On April 26, 2017, a grand jury returned an indictment charging Mr. Grinder with three counts of producing child pornography, in violation of 18 U.S.C. § 2251(a), and two counts of possessing child pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(B), 2256.  J.A. 13-17.

Mr. Grinder filed a motion to suppress all evidence seized from the laptop, the cell phone, and the SD card.  J.A. 48-60.[3]  He contended the state warrant was overbroad because it authorized police to seize any and all electronic devices at Mr. Grinder's home, without regard to their particular connection to any criminal activity.  J.A. 53-57.  The seizure of the cell phone and laptop was therefore illegal.  In addition, he argued, even if the

---

[3] The grand jury handed up a third superseding indictment on January 23, 2019.  J.A. 38-47.  That indictment, which is the charging instrument on which Mr. Grinder proceeded to trial, included five counts of production of child pornography, one count of attempted production of child pornography, two counts of possession of child pornography, and one count of witness tampering.  J.A. 38-46.  The various child pornography counts were based on images found on the laptop (Counts One and Seven), the cell phone (Counts Five, Six, and Eight), and the SD card (Counts Two, Three, and Four).  J.A. 38-45.

state warrant permitted officers to <u>seize</u> the cell phone and laptop, it did not permit them to <u>search</u>—i.e., conduct a forensic examination of—the computer. J.A. 55-57. A full-blown forensic examination of the laptop was beyond the scope of the state warrant. J.A. 55-57. Finally, Mr. Grinder argued the federal warrants were tainted by the evidence illegally obtained pursuant to the state warrant. As a result, evidence recovered during the follow-up searches of his devices was inadmissible as fruit of the poisonous tree. J.A. 58-59.

The government filed a response in opposition and, subsequently, a letter citing supplemental authority. S.J.A. 36-56; J.A. 85-86. In a response to that letter, Mr. Grinder identified an additional basis for concluding police violated his Fourth Amendment rights—namely, that the nearly four-month delay between officers' unlawful, warrantless seizure of his cell phone, in November 2016, and their application for a warrant to search it, in March 2017, was unreasonable. J.A. 88. Evidence recovered from the phone therefore had to be suppressed, he argued. J.A. 88.

After holding an evidentiary hearing, at which it heard testimony from Corporal Lare, the district court entered a written order denying Mr. Grinder's motion. J.A. 92-110. The court held the state warrant affidavit

10

established probable cause to believe that Mr. Grinder "used an Internet connected device to illegally purchase drugs in furtherance of the abuse of [Jane Doe]" and that he "used a cell phone to discuss both the purchase of those drugs and his alleged abuse of [Jane Doe]." J.A. 185. The state warrant therefore properly authorized police to seize and search Mr. Grinder's cell phone and laptop, the court held. J.A. 185. Because seizure and search of the phone were lawful under the state warrant, the court held, there was no "delay" in obtaining a warrant to search the phone. J.A. 189. In addition, the court concluded the state warrant was not overbroad because it authorized only the seizure of electronic devices linked to "the specified set of crimes supported by probable cause," i.e., the sexual-abuse crimes identified in the affidavit. J.A. 186.

As for Mr. Grinder's argument that the initial examination of his laptop exceeded the scope of the state warrant, the district court held that "a forensic search of a laptop, authorized by a warrant, includes 'the authority to open and cursorily view each file.'" J.A. 190 (quoting *United States v. Williams*, 592 F.3d 511, 523 (4th Cir. 2010)). Because evidence of Jane Doe's sexual abuse "could have been located anywhere on the laptop," the court held, examiners were justified in conducting a full-scale

11

search of the computer.  J.A. 190.  The magistrate judge was therefore

permitted to consider fruits of the initial laptop search when issuing the

federal warrants, and those warrants were valid as a result.  J.A. 190-91.

### F.    Motion to reconsider

On February 12, 2019, Mr. Grinder filed a motion asking the district

court to reconsider its denial of his suppression motion.  J.A. 196-201.  Mr.

Grinder cited to this Court's recent opinion in *United States v. Pratt*, 915

F.3d 266 (4th Cir. 2019), which held police unreasonably waited 31 days to

seek a search warrant for a cell phone they had lawfully seized.  J.A. 197-98.

Mr. Grinder contended that *Pratt* demonstrated investigators' four-month

delay in obtaining the federal warrants in his case was unreasonable.  J.A.

198-200.  As a result, he argued, all evidence recovered pursuant to those

warrants—which included images on his cell phone, the SD card, and his

laptop—should be suppressed.  J.A. 198-200.

The district court denied Mr. Grinder's reconsideration motion.  J.A.

311.

### G.    Trial and sentencing

Mr. Grinder repeatedly offered to accept a guilty plea that would

preserve his right to appeal the denial of his suppression motion.  J.A. 194.

12

When the government refused that suggestion, as well as Mr. Grinder's offer to conduct a streamlined trial based on stipulated facts, the parties proceeded to a three-day jury trial.  J.A. 194-95.

At trial, the government introduced evidence of the images found on Mr. Grinder's laptop, cell phone, and SD card.  J.A. 272-96, 337-433.[4]  Mr. Grinder did not put on a defense, and the jury convicted him on all counts. J.A. 759-60.

The district court sentenced Mr. Grinder to a total of 360 months in prison, to be followed by a lifetime term of supervised release.  J.A. 822-23. Mr. Grinder filed a timely notice of appeal.  J.A. 828.

## Summary of the Argument

The district court erred by denying Mr. Grinder's motion to suppress.

*First,* the state warrant was overbroad insofar as it authorized seizure of any and all cell phones and computers at Mr. Grinder's home.  The affidavit established Mr. Grinder owned a cell phone and had used an

---

[4] The government also introduced evidence pertaining to the witness-tampering count.  That count alleged that after being arrested, Mr. Grinder asked his sister to urge Jane Doe to recant her allegations.  J.A. 296-306.

internet-connected device to purchase drugs, but it provided no basis to

conclude he owned a computer.  Even if he did own a computer, there was

no reason to believe either that computer or Mr. Grinder's cell phone

would be at his house at the time of the search, since Mr. Grinder had left

the home with his phone the day before and had no immediate plans to

return.  Moreover, by permitting seizure of devices not belonging to Mr.

Grinder, the warrant outstripped the supporting affidavit's probable cause.

     *Second,* even if the state warrant authorized police to <u>seize</u> the laptop,

it did not permit them to <u>search</u> the laptop's files, in which they found

child pornography.  The only information in the affidavit tying the laptop

to the crimes enumerated in the warrant (sexual abuse, etc.) was an

allegation that Mr. Grinder used the internet to buy narcotics that he gave

to Jane Doe.  And the only place in the computer such evidence might be

found was Mr. Grinder's internet browser history.  The HSI analyst

therefore exceeded the scope of the state warrant when, during the initial

examination of the laptop, he searched locations other than the browser

history.

     *Third,* the federal warrants were tainted by the evidence investigators

illegally seized from the laptop, and the derivative evidence recovered

pursuant to those warrants is not admissible under the independent source doctrine. That doctrine allows admission of evidence discovered by illegal means if police subsequently discover the same evidence pursuant to a validly issued warrant—but only so long as the initial unlawful discovery did not affect either (1) officers' decision to seek the warrant or (2) the magistrate's decision to grant it. Neither requirement is satisfied here. Agent Federico applied for the federal warrants one day after confirming the images on the laptop depicted Jane Doe, and several months after learning all other information supporting his affidavit. This timeline strongly suggests the illegally seized images affected investigators' decision to seek the federal warrants. As for the second requirement, Agent Federico's affidavit, shorn of any reference to those images, fails to establish probable cause to search the laptop.

*Fourth,* even if, as the government argued below, police could seize Mr. Grinder's cell phone without a warrant based on exigent circumstances, they waited nearly four months to seek a warrant to search it. This delay unreasonably infringed his possessory interest in the phone.

This Court should reverse and remand with instructions to grant Mr. Grinder's motion to suppress.

15

## Argument

I.   **The state warrant was overbroad because the supporting affidavit did not demonstrate probable cause to seize Mr. Grinder's cell phone or laptop from his home.**

A.   **Standard of review**

When "[a]nalyzing a district court's decision to deny a motion to suppress, [this Court] review[s] legal conclusions de novo and factual findings for clear error." *United States v. Seerden*, 916 F.3d 360, 364 (4th Cir. 2019).

B.   **Argument**

1.   **Legal background**

"The Fourth Amendment protects individuals from 'unreasonable searches and seizures,' and provides that 'no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.'" *United States v. Drummond*, 925 F.3d 681, 686 (4th Cir. 2019). Probable cause exists "where the known facts and circumstances are sufficient to warrant a [person] of reasonable prudence in the belief that contraband or evidence of a crime will be found in a particular place." *United States v. Perez*, 393 F.3d 457, 461 (4th Cir. 2004).

16

In determining whether a search warrant is supported by probable cause, the "crucial" question is "whether it is reasonable to believe that the items to be seized will be found in the place to be searched." *United States v. Lalor*, 996 F.2d 1578, 1582 (4th Cir. 1993); *see also, e.g., United States v. Wienke*, 733 F. App'x 65, 69 (4th Cir. 2018) (unpublished) (same); *Wyoming v. Houghton*, 526 U.S. 295, 302 (1999) ("The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought."). If such a belief is unreasonable, then the warrant affidavit fails to establish a sufficient "nexus" between the items sought and the location of the search. *United States v. Lull*, 824 F.3d 109, 119 (4th Cir. 2016).

A warrant may properly authorize the seizure of numerous items at one time—but only if "there is probable cause for *each item* on the list." *United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents*, 307 F.3d 137, 148 (3d Cir. 2002) (emphasis added); *see also In re Grand Jury Subpoenas Dated Dec. 10, 1987*, 926 F.2d 847, 857 (9th Cir. 1991) ("[P]robable cause must exist to seize *all the items* of a particular type described in the warrant." (emphasis added)); *United States v. Hurwitz*, 459

17

F.3d 463, 473 (4th Cir. 2006) ("The Fourth Amendment requires that a

warrant be no broader than the probable cause on which it is based.").  This

"probable cause rule" is designed to "protect privacy by prohibiting a

general, exploratory rummaging in a person's belongings." *United States v.*

*Weber*, 923 F.2d 1338, 1342 (9th Cir. 1990).

> **2.     The state warrant was not supported by probable
> cause to search Mr. Grinder's home for his cell
> phone and laptop.**

Here, Detective Emminizer and Trooper Barry's affidavit established,

at most, probable cause to believe Mr. Grinder (1) owned a cell phone, and

(2) had used the internet to order some kind of drug that he gave to Jane

Doe.  But it did not demonstrate any reason to believe he owned any

internet-connected devices other than a cell phone, e.g., a laptop.  Virtually

all cell phones today feature internet connectivity, so the fact that Mr.

Grinder ordered drugs online provides no reason to believe he owned or

had access to a computer.  Indeed, cell phones' "immense storage capacity"

and functional versatility render computers increasingly unnecessary for

many people.  *See Riley v. California*, 573 U.S. 373, 393 (2014) ("The term 'cell

phone' is itself misleading shorthand; many of these devices are in fact

minicomputers that also happen to have the capacity to be used as a

telephone.  They could just as easily be called cameras, video players,

rolodexes, calendars, tape recorders, libraries, diaries, albums, televisions,

maps, or newspapers.").

Nor did the state warrant affidavit establish probable cause to believe

that, if Mr. Grinder did own a computer, either that computer or his cell

phone would be located at 261 Montpelier Court.  Indeed, the affidavit

suggested the opposite.  The affiants informed the state court judge that

Alesha said Mr. Grinder had "left the house" the day before, and "she

currently does not know where he is."  S.J.A. 4.  They also recounted that

when Alesha asked Mr. Grinder to come home, he refused to do so because

he was afraid he would "get in trouble" for the controlled substance he had

purchased.  S.J.A. 4.  Given that "nearly three-quarters of smart phone

users report being within five feet of their phones most of the time," *id.* at

395, it would be strange to expect to find Mr. Grinder's cell phone at a

home he had left and to which he had no immediate plans to return.

For the same reason, it is unreasonable to conclude that, if Mr.

Grinder owned a laptop, he would have left it at 261 Montpelier Court

before leaving the residence.  Someone who leaves his home with no

immediate plans to return would likely take important personal items like

19

a laptop with him—especially when, as the affiants alleged was the case here, those items contain evidence of a serious crime.

The state warrant affidavit did not make it "reasonable to believe that the items to be seized w[ould] be found in the place to be searched." *Lalor*, 996 F.2d at 1582. Put differently, the affidavit did not establish probable cause to believe a "nexus" existed between "the place to be searched" (261 Montpelier Court) and "the items to be seized" (Mr. Grinder's cell phone and any laptop he may—or may not—have owned). *Lull*, 824 F.3d at 119.

The D.C. Circuit's opinion in *United States v. Griffith*, 867 F.3d 1265 (D.C. Cir. 2017), is instructive. Police in that case obtained a warrant to search an apartment that the defendant, who had recently been released from jail, shared with his girlfriend. *Griffith*, 867 F.3d at 237-38. The affidavit asserted probable cause to believe the defendant had been the getaway driver in a gang-related murder more than a year previously. *Id.* at 238. Among the items the warrant authorized police to seize were "all electronic devices to include, but not limited to cellular telephone(s), computer(s), electronic tablet(s), devices capable of storing digital images (to include, but not limited to, PDAs, CDs, DVD's [and] jump/zip drives)." *Id.* at 238. To establish probable cause for these items, the warrant

20

application claimed that "gang/crew members involved in criminal activity maintain regular contact with each other, even when they are arrested or incarcerated, and that they often stay advised and share intelligence about their activities through cell phones and other electronic communication devices and the Internet, to include Facebook, Twitter and E-mail accounts." *Id.*

The D.C. Circuit held the affidavit failed to establish probable cause that police would find a cell phone belonging to the defendant in his apartment. *Id.* at 239-40. While acknowledging that most people today own cell phones, the court concluded the affidavit "conveyed no reason to think that [the defendant], in particular, owned a cell phone":

> There was no observation of [the defendant] using a cell phone, no information about anyone having received a cell phone call or text message from him, no record of officers recovering any cell phone in his possession at the time of his previous arrest (and confinement) on unrelated charges, and no indication otherwise of his ownership of a cell phone at any time.

*Id.* at 241. Moreover, even if the defendant did own a cell phone, "the affidavit set out no reason to believe the phone was likely to be found at the place to be searched," i.e., his apartment. *Id.* at 242. After all, a cell phone "is nearly a 'feature of human anatomy,'" and "[p]eople ordinarily

carry their cell phones with them wherever they go." *Id.* (quoting *Riley*, 573 U.S. at 385). Thus a warrant can authorize a search of an apartment for a cell phone only if the affidavit establishes probable cause to believe "the person (and his cell phone) would be home" at the time of the search. *Id.* Because the affidavit in *Griffith* did not do so, the warrant was invalid. *Id.* at 244.

It was invalid for another reason as well: "[i]t broadly authorized seizure of *all* cell phones and electronic devices, without regard to ownership." *Id.* at 245 (emphasis in original). "That expansive sweep," the court held, "far outstripped the police's proffered justification for entering the home—viz., to recover any devices owned by [the defendant]." *Id.* At most, the affidavit established probable cause to believe the defendant had been involved in a murder; it gave no reason to suspect other people of involvement. *Id.* But the warrant authorized seizure of cell phones belonging to anyone else at the house, such as the defendant's girlfriend, "even if police *knew* the device belonged to someone other than [the defendant]." *Id.* (emphasis in original).

And the "warrant's overbreadth [wa]s particularly notable because police sought to seize otherwise lawful objects: electronic devices." *Id.*

22

Because a "warrant must be tailored to the justifications for entering the home," even the government conceded the warrant in *Griffith* was "invalid insofar as it authorized the seizure of all devices found in the apartment without regard to ownership." *Id.* at 245-46.

The state warrant in this case is overbroad for all the same reasons as the warrant in *Griffith*. The affidavit demonstrated Mr. Grinder owned a <u>cell phone</u> (from which he sent text messages to Alesha), but it included no information whatsoever establishing he owned a <u>computer</u> as well. *See id.* at 241-42 (noting "roughly 75%" of American adults own a computer and observing that despite higher rate of cell phone ownership, "[w]e are aware of no case, and the government identifies none, in which police obtained authorization to search a suspect's home for a cell phone without any particularized information that he owned one"). Furthermore, the affidavit not only gave no reason to believe Mr. Grinder's cell phone would be at his house—it provided affirmative reason to believe it would not be, since Mr. Grinder had left the home with his cell phone and had no immediate plans to return. *Accord United States v. Holtzclaw*, 2018 WL 3128999, at *6 (M.D.N.C. June 26, 2018) ("While it is reasonable to infer that the nature of

some items suggests the item might be found in the home, . . . such an inference would not apply to a cell phone.").

And as in *Griffith*, the warrant in this case granted authority to seize "any and all" cellphones and computers, "without regard to ownership." 867 F.3d at 245, 247. But the supporting affidavit established, at most, probable cause to believe evidence would be found on Mr. Grinder's devices. The affidavit therefore failed to demonstrate probable cause as to "*each item* on the list" of items to be seized, i.e., cellphones and computers belonging to people other than Mr. Grinder. *Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents*, 307 F.3d at 148; *see also, e.g.*, *United States v. Jackson*, 2018 WL 2220277, at \*5 n.2 (E.D. Mich. May 15, 2018) (concluding a warrant "authoriz[ing] the seizure of electronic devices belonging to third parties unconnected to [a] homicide investigation" has "an indiscriminate sweep [that] is constitutionally intolerable").

Accordingly, the state warrant was invalid to the extent it authorized the seizure of Mr. Grinder's cell phone and laptop. Because the warrant did not authorize their seizure, it also necessarily could not—and did not—authorize a search of those devices. Evidence from the cell phone and laptop should have been suppressed. *See United States v. Stephens*, 764 F.3d

24

327, 335 (4th Cir. 2014) ("The exclusionary rule generally prohibits the

introduction at criminal trial of evidence obtained in violation of a

defendant's Fourth Amendment rights.").

### 3.    The good faith exception does not apply.

The district court held that even if the state warrant was unsupported

by probable cause, suppression of evidence recovered from Mr. Grinder's

devices was improper because the executing officers could have relied on

the warrant in good faith.  J.A. 188.  Under the good faith exception to the

exclusionary rule, "evidence obtained by an officer who acts in objectively

reasonable reliance on a search warrant will not be suppressed, even if the

warrant is later deemed invalid."  *United States v. Thomas*, 908 F.3d 68, 72

(4th Cir. 2018).  The exception does not apply, however, if the affidavit is

"so lacking in indicia of probable cause as to render official belief in its

existence entirely unreasonable."  *United States v. McLamb*, 880 F.3d 685, 690

(4th Cir. 2018).

Relying on this principle, the D.C. Circuit in *Griffith* found the good

faith exception inapplicable because: (1) "the affidavit failed to establish

probable cause to believe that *any* cell phone (or other electronic device)

containing incriminating information about [the defendant's] suspected

offense would be found in the apartment," and (2) "[n]othing in the affidavit or warrant supported — or could have supported — probable cause to seize any and all phones, tablets, computers, and other electronic devices in the apartment."  867 F.3d at 247-48 (emphasis in original).  The same is true here.  Detective Emminizer and Trooper Barry's affidavit strongly suggested Mr. Grinder's phone was *not* at his home, and it gave no reason to believe *any* computer would be found there.  Moreover, because the only crimes the affidavit alleges are Mr. Grinder's abuse of Jane Doe, nothing in that affidavit supported probable cause to seize "any and all" electronic devices in the home, regardless of ownership.  *Id.*

A reasonable police officer could not have believed the state warrant licensed seizure of the items police recovered on November 29, 2016.  The good faith exception is inapplicable.

## II.    A full-scale forensic examination of Mr. Grinder's laptop was beyond the scope of the state warrant.

Even assuming the state warrant properly authorized police to seize Mr. Grinder's laptop, the HSI analyst exceeded the scope of that warrant when he searched parts of the laptop that he had no reason to believe would contain evidence of sexual abuse.

## A.    Standard of review

"Whether a search is within the scope of a warrant is a question of law subject to de novo review."  *United States v. Srivastava*, 540 F.3d 277, 287 (4th Cir. 2008).

## B.    Argument

### 1.    Police may search only those parts of a computer likely to contain the items for which probable cause exists.

"A search conducted pursuant to a warrant is limited in scope by the terms of the warrant's authorization."  *United States v. Phillips*, 588 F.3d 218, 223 (4th Cir. 2009).  To prevent a warrant search from becoming "a general, exploratory rummaging in a person's belongings," courts generally require the authorizing warrant to "particularly describe the place to be searched, and the persons or things to be seized."  *United States v. Kimble*, 855 F.3d 604, 610 (4th Cir. 2017).  This "particularity requirement . . . is fulfilled when the warrant identifies the items to be seized by their relation to designated crimes and when the description of the items leaves nothing to the discretion of the officer executing the warrant."  *United States v. Dargan*, 738 F.3d 643, 647 (4th Cir. 2013).

Satisfying the particularity requirement can be difficult in the context of electronic searches, especially searches of computers.  That is because

27

"[c]omputer files can be misnamed by accident, disguised by intention, or

hidden altogether, leaving investigators at a loss to know *ex ante* what sort

of search will prove sufficient to ferret out the evidence they legitimately

seek." *United States v. Christie*, 717 F.3d 1156, 1166 (10th Cir. 2013); *see also,*

*e.g.*, *United States v. Hill*, 459 F.3d 966, 978 (9th Cir. 2006) ("Images can be

hidden in all manner of files, even word processing documents and

spreadsheets. Criminals will do all they can to conceal contraband,

including the simple expedient of changing the names and extensions of

files to disguise their content from the casual observer."). As a result,

courts have in some cases relaxed the particularity requirement as it

applies to computer searches, in recognition that there may be no way to

know, before executing a search of a computer, exactly where officers are

likely to find the objects of their search. *See, e.g.*, *United States v. Loera*, 923

F.3d 907, 917 (10th Cir. 2019) ("[I]t is unrealistic to expect a warrant

prospectively to restrict the scope of a search by directory, filename or

extension or to attempt to structure search methods.").

   At the same time, courts have recognized that "granting the

Government a *carte blanche* to search *every* file on the hard drive

impermissibly transforms a limited search into a general one." *United*

*States v. Stabile*, 633 F.3d 219, 237 (3d Cir. 2011) (emphasis in original); *see also, e.g.*, *United States v. Galpin*, 720 F.3d 436, 447 (2d Cir. 2013) ("There is . . . a serious risk that every warrant for electronic information will become, in effect, a general warrant, rendering the Fourth Amendment irrelevant."); *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1176 (9th Cir. 2010) (en banc) (same), *overruling on other grounds recognized by United States v. Cano*, --- F.3d ---, 2019 WL 3850607 (9th Cir. Aug. 16, 2019).

These two interests—affording law enforcement flexibility when executing a computer search, and protecting search subjects' electronic privacy—are "in tension with each other," and courts have "grappled with how to balance" them. *United States v. Richards*, 659 F.3d 527, 538 (6th Cir. 2011). Under the balance that courts have generally struck, a broadly worded warrant may authorize a computer search in facially expansive terms, but police officers may not execute the warrant in a way that unreasonably invades protected privacy interests. Officers' respect for the scope of a warrant, in other words, is determined not by the warrant's prospective description of the places to be searched and items to be seized, but by a retrospective judicial assessment of whether officers limited their search to places likely to contain the items for which probable cause exists.

29

As then-Judge Gorsuch explained in an opinion for the Tenth Circuit:

> Even putting aside for the moment the question what
> limitations the Fourth Amendment's particularity requirement
> should or should not impose on the government *ex ante*, the
> Amendment's protection against "unreasonable" searches
> surely allows courts to assess the propriety of the government's
> search methods (the *how*) *ex post* in light of the specific
> circumstances of each case. So even if courts do not specify
> particular search protocols up front in the warrant application
> process, they retain the flexibility to assess the reasonableness
> of the search protocols the government actually employed in its
> search after the fact, when the case comes to court, and in light
> of the totality of the circumstances.

*Christie*, 717 F.3d at 1166-67 (citation omitted) (emphasis in original); *see also, e.g.*, *Archer v. Chisholm*, 870 F.3d 603, 617 (7th Cir. 2017) ("The target's privacy interest in unrelated materials is typically addressed by the search methods used by the police after seizure, because an *ex ante* screen is impossible."). Courts' "ex post assessment of the propriety of a government search is essential to ensuring that the Fourth Amendment's protections are realized" in the context of computer searches. *Loera*, 923 F.3d at 917.

In conducting this after-the-fact review, courts "employ[] the Fourth Amendment's bedrock principle of reasonableness on a case-by-case basis." *Richards*, 659 F.3d at 538; *see also Loera*, 923 F.3d at 916

30

("Determining whether a search exceeds the scope of its authorizing warrant is, like most inquiries under the Fourth Amendment, an exercise in reasonableness assessed on a case-by-case basis.").  Traditional principles of reasonableness dictate that "the scope of a lawful search is defined by the object of the search and the places in which there is probable cause to believe that it may be found."  *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). Consistent with this principle, a warrant "limit[s] the authorization to search to the specific areas and things for which there is probable cause to search."  *Horton v. California*, 496 U.S. 128, 139 n.10 (1990).  The Supreme Court has put it this way: "Just as probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom, probable cause to believe that undocumented aliens are being transported in a van will not justify a warrantless search of a suitcase."  *United States v. Ross*, 456 U.S. 798, 824 (1982); *see also Archer*, 870 F.3d at 617 ("The objects of the search set the boundaries of the scope; if you are looking for an adult elephant, searching for it in a chest of draw[er]s is not reasonable.").

In the computer-search context, therefore, courts ask "whether the forensic steps of the search process were reasonably directed at uncovering

the evidence specified in the search warrant." *Loera*, 923 F.3d at 917.

Searches of "digital media" must be "narrowly tailored to uncover only

those things described" in the warrant, *United States v. Mann*, 592 F.3d 779,

786 (7th Cir. 2010), and officers should "conduct the search in a way that

avoids searching files of types not identified in the warrant," *United States*

*v. Evers*, 669 F.3d 645, 653 (6th Cir. 2012).  Thus investigators may search

only "in places where [the items to be seized] might logically be found"

and in places that "would be most likely to contain" those items.  *Loera*, 923

F.3d at 918.

    In determining what digital evidence a warrant authorizes officers to

search for—and therefore which parts of a computer they may search—

courts look to "the text of the warrant, with due regard to context, coupled

with the specifics of the supporting affidavit."  *United States v. Burgess*, 576

F.3d 1078, 1092 (10th Cir. 2009).  Use of the affidavit to clarify the scope of a

computer-search warrant comports with this Court's case law holding that

when deciding "[w]hether a search is within the scope of a warrant," courts

"are obliged to assess the contents of a search warrant *and its supporting*

*affidavits* in a commonsense and realistic fashion."  *Srivastava*, 540 F.3d at

287 (emphasis added); *accord United States v. Riesselman*, 646 F.3d 1072, 1077

(8th Cir. 2011) ("Although a search warrant must be particular, adequate reference to an affidavit or attachment listing items to be searched or seized can satisfy the requirement."); *United States v. Hitchcock*, 286 F.3d 1064, 1071 (9th Cir. 2002) ("In determining whether or not a search is confined to its lawful scope, it is proper to consider both the purpose disclosed in the application for a warrant's issuance and the manner of its execution.").

### 2. The initial forensic examination of Mr. Grinder's laptop exceeded the scope of the state warrant.

Here, the state warrant authorized police to "[s]eize and have forensically analyzed . . . any cellular telephones" or "computers" in Mr. Grinder's home. S.J.A. 7. The warrant itself did not provide any limitations on what types of electronic data examiners could seize, or on which parts of the seized computers they could search for those data. But as explained above, "granting the Government a *carte blanche* to search *every* file on [a] hard drive impermissibly transforms a limited search into a general one," in violation of the Fourth Amendment. *Stabile*, 633 F.3d at 237. Courts decline to read facially unparticularized computer-search warrants this way. *See, e.g.*, *Burgess*, 576 F.3d at 1091 (adopting narrowing construction of warrant because "[i]f the warrant is read to allow a search

33

of all computer records without description or limitation it would not meet the Fourth Amendment's particularity requirement").

The state warrant should therefore be read with reference to Detective Emminizer and Trooper Barry's supporting affidavit. *See id.* at 1092; *Srivastava*, 540 F.3d at 287. That affidavit asserted probable cause to believe Mr. Grinder's home—and any cell phones and computers within it—would contain evidence of five enumerated crimes: child abuse of a minor, second-degree rape, sexual offense in the second degree, sexual offense in the third degree, and sexual abuse of a minor. S.J.A. 1. The only basis the affidavit supplied to believe a laptop would contain evidence of hands-on sexual-abuse offenses is the allegation that (1) Mr. Grinder "orders [Clonazelam] via the Internet," and (2) Alesha said the Robitussin in Jane Doe's room, which she "assumed" Mr. Grinder had given to Jane Doe, tasted like Clonazelam. S.J.A. 3.

To the extent that evidence of the enumerated crimes would be found on a laptop, therefore, it would be in the form of a browser history listing websites from which Mr. Grinder purchased Clonazelam. The affidavit does not establish, or even attempt to establish, probable cause to believe that evidence of Mr. Grinder's Clonazelam purchase would be found in

34

any part of his laptop other than the browser history.  Specifically, it gives no reason whatsoever to believe that any files on his laptop—whether Word documents, videos, photographs, or otherwise—would contain evidence of purchasing Clonazelam, and thus of sexual abuse.  The file directories of Mr. Grinder's laptop are not a location in which the object of the search (websites indicative of Clonazelam purchases) "might logically be found." *Loera*, 923 F.3d at 918.

The search of Mr. Grinder's laptop ended up revealing images of child pornography, but at the time police applied for and executed the state warrant, they had no reason to believe Mr. Grinder had produced or possessed child pornography.  Detective Emminizer and Trooper Barry's affidavit did not seek authorization to search for evidence of child pornography, and the state warrant did not grant it.  Rather, the only crimes identified in the state warrant were sexual-abuse offenses.  And this Court has held that "evidence of child molestation alone does not support probable cause to search for child pornography." *United States v. Doyle*, 650 F.3d 460, 472 (4th Cir. 2011).  Thus the state warrant in this case cannot be read as authorizing police to search in those parts of the laptop that might contain child pornography, e.g., the photo or video directories.

35

Instead, the warrant, read "with due regard to context, coupled with the specifics of the supporting affidavit," *Burgess*, 576 F.3d at 1092, licensed a search for only one type of evidence: visits to websites from which Mr. Grinder might have purchased Clonazelam. Those websites—and only those websites—were "the object of the search" permitted by the state warrant because they are the only evidence for which probable cause existed. *Garrison*, 480 U.S. at 84. Police were therefore empowered to search only "the places in which there is probable cause to believe that [those websites might] be found." *Id.* And the only place fitting that description is the laptop's browser history. Because the file directories on Mr. Grinder's laptop were not "most likely to contain" the evidence sought, investigators were not permitted to search there. *Loera*, 923 F.3d at 918.

Reading the state warrant more broadly—e.g., as authorizing a search of some or all of the laptop's files—would violate the foundational Fourth Amendment principle that a warrant "limit[s] the authorization to search to the specific areas and things for which there is probable cause to search." *Horton*, 496 U.S. at 139 n.10. There was no probable cause to believe evidence of sexual abuse would be found in the laptop's files, and

36

the warrant therefore did not permit a search of those files. By rummaging through the laptop's files, the HSI forensic analyst failed to limit his search to steps that "were reasonably directed at uncovering the evidence specified in the search warrant." *Loera*, 923 F.3d at 917. Because that search exceeded the scope of the state warrant, its fruits were seized in violation of Mr. Grinder's Fourth Amendment rights. *Phillips*, 588 F.3d at 223.

### 3. This Court's opinion in *Williams* does not govern this case.

Citing this Court's opinion in *United States v. Williams*, 592 F.3d 511 (4th Cir. 2010), the district court held the HSI analyst's initial examination of the laptop stayed within the scope of the state warrant because "a forensic search of a laptop, authorized by a warrant, includes 'the authority to open and cursorily view each file.'" J.A. 190. *Williams* cannot bear the weight the district court placed on it.

The police in *Williams* learned that a church had received a number of threatening emails in which the sender described himself as a pedophile and discussed his desire to sexually molest specific children who attended the church. 592 F.3d at 514-15. Police applied for a warrant to search a home tied to an internet account that had been used to send several of the

emails.  *Id.* at 515.  In the warrant application, the affiant wrote that in his

training and experience, "adults who are engaged in the sexual

exploitation of children keep images and related documents with them.

They also collect images and texts describing sexual interaction with

minors and child erotica."  *Id.*  The warrant authorized officers to seize

from the home:

> Any and all computer systems and digital storage media,
> videotapes, videotape recorders, documents, photographs, and
> Instrumentalities indicative of the offense of § 18.2–152.7:1
> Harassment by Computer and § 18.2–60 Threats of death or
> bodily injury to a person or member of his family; threats to
> commit serious bodily harm to persons on school property,
> Code of Virginia (as amended).

*Id.* at 515-16.

While searching a computer found in the defendant's home,

investigators discovered deleted images of child erotica.  *Id.* at 516.  A

search of a DVD taken from the home also revealed 39 images of child

pornography.  *Id.*  After being indicted for possession of child

pornography, the defendant moved to suppress the images from the DVD,

arguing the seizure "exceeded the scope of the warrant and was not

justified by the plain-view exception to the warrant requirement."  *Id.*

This Court upheld the search. It reasoned, first, that the warrant "authorize[d] a search for instrumentalities of computer harassment and 'photographs . . . indicative of' this offense, which involves communicating 'obscene, vulgar, profane, lewd, lascivious, or indecent language,' or making a 'suggestion or proposal of an obscene nature,' or threatening an 'illegal or immoral act.'" *Id.* at 520 (ellipsis in original) (quoting Va. Code Ann. § 18.2–152.7:1). Given that the threatening emails came from a self-identified pedophile, the Court concluded that "pornographic images involving children were relevant to demonstrating the authorship and purpose of the e-mails." *Id.* The images therefore fell within the scope of the warrant as "instrumentalities" of the enumerated crimes. *Id.* at 520-21.

The Court also held, in the alternative, that seizure of the images was proper under the plain view exception to the warrant requirement. *Id.* at 521. Pursuant to that exception, "police may seize evidence in plain view during a lawful search if (1) the seizing officer is lawfully present at the place from which the evidence can be plainly viewed; (2) the seizing officer has a lawful right of access to the object itself; and (3) the object's incriminating character is . . . immediately apparent." *Id.* (ellipsis in original). The Court explained:

39

> In this case, the warrant authorized a search of [the defendant's] computers and digital media for evidence relating to the designated Virginia crimes of making threats and computer harassment. To conduct that search, the warrant impliedly authorized officers to open each file on the computer and view its contents, at least cursorily, to determine whether the file fell within the scope of the warrant's authorization—*i.e.*, whether it related to the designated Virginia crimes of making threats or computer harassment.

*Id.* at 521-22. Because the warrant authorized police to search the files on the defendant's digital media, and because the incriminating nature of child pornography is immediately apparent, the plain view exception applied. *Id.* at 522.

The statement from *Williams* that the district court quoted—that a warrant search of a computer "include[s] the authority to open and cursorily view each file," *id.* at 523—does not apply here. The affidavit in *Williams* contained an assertion that, in the affiant's training and experience, "adults who are engaged in the sexual exploitation of children keep images and related documents with them" and "collect images and texts describing sexual interaction with minors and child erotica." *Id.* at 515. The affidavit therefore established probable cause to believe a computer at the sender's home would contain images of child erotica or child pornography, and the warrant specifically authorized police to seize

40

"photographs . . . indicative of" the enumerated offenses, which, the Court concluded, included sexually explicit images of children. *Id.* at 521 (ellipsis in original).

It was in this context—where a warrant explicitly authorized a search for certain electronic files, and the affidavit established probable cause to believe those files contained evidence of a crime—that the *Williams* Court said investigators may open and cursorily inspect all of a computer's files. This conclusion makes sense. After all, to be effective, a search for the specified files "could not be limited to reviewing only the files' designation or labeling, because the designation or labeling of files on a computer can easily be manipulated to hide their substance. Surely, the owner of a computer, who is engaged in criminal conduct on that computer, will not label his files to indicate their criminality." *Id.* at 522. But *Williams* did not address a situation like the one in this case, where (1) the warrant affidavit does not assert probable cause to believe electronic devices will contain

41

photographs (or other files) indicative of a crime, and (2) the warrant does not expressly authorize a search for files of any kind.[5]

Reading *Williams* to apply to a case like Mr. Grinder's would be inconsistent with basic principles of Fourth Amendment law. As the Supreme Court has made clear, a warrant "limit[s] the authorization to search to the specific areas and things for which there is probable cause to search." *Horton*, 496 U.S. at 139 n.10. Thus if "the object of a search is *likely to be an image file*, . . . there may be no practical substitute for actually looking in many (perhaps all) folders and sometimes at the documents

---

[5] *Williams* was decided in 2010, before this Court's opinion in *Doyle*. Following *Doyle*, which held that "evidence of child molestation alone does not support probable cause to search for child pornography," 650 F.3d at 472, it is not clear the warrant in *Williams* could still establish probable cause to search for images on a computer. Regardless, this Court need not resolve that question in this case, for two reasons. First, the defendant in *Williams* did not dispute the existence of probable cause; he challenged only "(1) whether the government's search for and seizure of child pornography fell within the scope of the warrant's authorization; and (2) whether the evidence of child pornography was in any event properly seized under the plain-view exception to the warrant requirement." 592 F.3d at 519. Thus the Court in *Williams*, at most, assumed probable cause existed. Second, and more important, even if *Williams* can be reconciled with *Doyle*, the state warrant affidavit in Mr. Grinder's case did not contain allegations like those in *Williams*, e.g., that people who engage in child molestation often keep sexually explicit images of children on their computers. The warrant in this case, therefore, cannot be read to authorize a search for images of any kind.

contained within those folders." *Loera*, 923 F.3d at 919 (emphasis added); *see also, e.g.*, *Richards*, 659 F.3d at 540 (explaining that "warrant authorizing broad search of personal computer for child pornography" was permissible where "the officers *knew* . . . that a video and photographs of the alleged incident supposedly existed," but "not the particular format in which these items were being kept" (citing *United States v. Summage*, 481 F.3d 1075, 1079-80 (8th Cir. 2007)) (emphasis added)).

But it does not follow that, if the object of the search is *not* likely to be an image file—and indeed, is not likely to be a file at all—police may still search all of a computer's folders and documents. "Just as probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom," *Ross*, 456 U.S. at 824, probable cause to believe evidence of a crime may be found in a laptop's browser history will not support a warrant to search the laptops's file directories.

Even *Williams* implicitly acknowledged this limitation. To support the proposition that officers executing a computer-search warrant may "open each file on the computer and view its contents, at least cursorily," *Williams* cited to footnote eleven in *Andresen v. Maryland*, 427 U.S. 463

43

(1976). 592 F.3d at 521-22. Elsewhere in the opinion, the *Williams* Court described the teaching of that footnote as follows: "*When a search requires review of a large collection of items, such as papers*, 'it is certain that some innocuous documents will be examined, at least cursorily, in order to determine whether they are, in fact, among those papers authorized to be seized.'" *Id.* at 519-20 (quoting *Andresen*, 427 U.S. at 482 n.11) (emphasis added). The unspoken corollary to this principle is that when a search does *not* require review of a large collection of papers, review of innocuous documents is *not* permitted.

Mr. Grinder's case—unusual among challenges to computer-search warrants—fits this latter category: the *only* evidence that police had probable cause to believe might be on his laptop was visits to certain websites, and the *only* location likely to contain that evidence was his browser search history. A review of a large number of files or documents was therefore unnecessary, and the state warrant cannot be read to authorize a search through the files on Mr. Grinder's laptop. The child pornography discovered during HSI's initial forensic examination of that laptop was seized in violation of the Fourth Amendment and therefore should have been suppressed.

44

### 4.     The good faith exception does not apply.

The good faith exception to the exclusionary rule does not apply here.

In *United States v. Leon*, 468 U.S. 897 (1984), which first recognized the good faith exception, the Supreme Court explained that "[i]f exclusion of evidence obtained pursuant to a subsequently invalidated warrant is to have any deterrent effect" on police misconduct, it "must alter the behavior of individual law enforcement officers or the policies of their departments." 468 U.S. at 918.  Because suppressing evidence seized under a warrant "punish[es] the errors of judges and magistrates," rather than deterring police misconduct, it does not promote the goals the exclusionary rule is designed to serve.  *Id.* at 916.

The Court cautioned, however, that its "discussion of the deterrent effect of excluding evidence obtained in reasonable reliance on a subsequently invalidated warrant assumes, of course, that the officers properly executed the warrant and searched only those places and for those objects that it was reasonable to believe were covered by the warrant."  *Id.* at 918 n.19.  Suppressing evidence that is outside the scope of a warrant, in other words, deters police misconduct because officers do not

45

act in reasonable reliance on that warrant when they seize items, or search in places, not covered by the warrant. There is nothing reasonable about seizing items a warrant does not authorize police to seize.

Numerous courts have therefore held that "the *Leon* good faith exception will not save an improperly executed warrant." *United States v. Angelos*, 433 F.3d 738, 746 (10th Cir. 2006); *see also, e.g.*, *United States v. Ewain*, 88 F.3d 689, 695 (9th Cir. 1996) ("In this case, we agree with the district judge's finding that the search was in good faith, in the objective sense that it did not go outside the scope authorized by the search warrant."); *United States v. Curzi*, 867 F.2d 36, 44 (1st Cir. 1989) ("[T]he good faith exception . . . will not be applied unless the officers executing search warrants, at the very minimum, act within the scope of the warrants and abide by their terms." (ellipsis in original)); *United States v. Long*, 797 F.3d 558, 566 (8th Cir. 2015) ("Under the good-faith exception, evidence is not excluded when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and *acted within its scope*, even if the warrant is subsequently invalidated." (emphasis added)).

This Court, too, has recognized that "the deterrence purpose of the exclusionary rule is not achieved through the suppression of evidence

46

obtained by an officer acting with objective good faith *within the scope of a search warrant* issued by a magistrate." *Perez*, 393 F.3d at 461 (emphasis added); *cf. Buonocore v. Harris*, 65 F.3d 347, 356 (4th Cir. 1995) ("[A] reasonable officer would be aware . . . of the rule confining the search to items particularly described in the warrant. Nor is there any question that those conducting the search may only actively search for the items listed in the warrant." (ellipsis in original)).

As explained above, the child pornography images in the file directories of Mr. Grinder's laptop were outside the scope of the state warrant. The good faith exception therefore does not apply, and any evidence discovered during the initial examination of Mr. Grinder's laptop should have been suppressed.

## III.   The federal warrants were tainted by evidence illegally obtained from the initial examination of Mr. Grinder's laptop.

Agent Federico used the images seized from Mr. Grinder's laptop to establish probable cause in his affidavit supporting the federal warrants. Those warrants were therefore tainted by the unlawful initial examination of the laptop, and all evidence seized under the federal warrants should have been suppressed.

47

In district court, the government attempted to evade this rule by arguing that even if the initial investigation of Mr. Grinder's laptop was unlawful, all evidence seized pursuant to the follow-up federal warrants is nevertheless admissible because those warrants' supporting affidavit contained sufficient untainted information to establish probable cause. S.J.A. 55-56.  This argument, which is rooted in the "independent source" doctrine, is unavailing.

## A.     Standard of review

On appeal from a suppression motion involving the independent source doctrine, this Court "review[s] legal conclusions de novo and factual findings for clear error."  *See United States v. Mowatt*, 513 F.3d 395, 399, 403-04 (4th Cir. 2008), *abrogated on other grounds by Kentucky v. King*, 563 U.S. 452 (2011)

## B.     Legal background

"[T]he exclusionary rule encompasses both the primary evidence obtained as a direct result of an illegal search or seizure and . . . evidence later discovered and found to be derivative of an illegality, the so-called 'fruit of the poisonous tree.'"  *Utah v. Strieff*, 136 S. Ct. 2056, 2061 (2016). The exclusionary rule does not apply, however, if suppression of evidence

"would put the police in a worse position than they would have been in absent any error or violation." *Mowatt*, 513 F.3d at 403-04. Therefore, "under the 'independent source' doctrine, when the police discover a particular fact by illegal means but later acquire knowledge of that same fact by independent, legitimate means, evidence of that fact is not excludable as fruit of the police misconduct." *Id.* at 404.

If execution of a search warrant is preceded by an illegal search of the same location, "the evidence recovered in the later search is not admissible unless the government establishes that no information gained from the illegal search affected either the law enforcement officers' decision to seek a warrant or the magistrate's decision to grant it." *Id.* "[T]he determination of the existence of these factors should be supported by adequate findings by the district court." *United States v. Campbell*, 945 F.2d 713, 716 (4th Cir. 1991).

### C. Argument

#### 1. The government has waived its right to argue that the independent source doctrine applies.

Mr. Grinder's reply brief in district court argued the government would be unable to carry its burden of showing that discovery of the images on Mr. Grinder's laptop did not affect investigators' decision to

49

seek the federal warrants.  J.A. 80-83.  Despite submitting multiple additional filings addressing Mr. Grinder's suppression motion, *see* J.A. 85-86, 90-91, the government never disputed that the child pornography recovered from the laptop "affected . . . law enforcement officers' decision to seek [the federal] warrant[s]." *Mowatt*, 513 F.3d at 404.

Nor did the government put on any testimony at the evidentiary hearing to establish that, even absent the initial examination of the laptop, HSI would still have sought the federal warrants.  And during oral argument at the end of the hearing, the government did not contend the results of the initial computer search did not affect HSI's decision to seek the federal warrants.  J.A. 111-34, 137-38, 147-54, 161-63.  Indeed, when defense counsel asserted the government could not show that the prior unlawful search did not "influence[] . . . the officer's decision to seek a new warrant," the government declined to argue otherwise.  J.A. 163.

The government had ample opportunity to attempt to carry its burden.  It chose not to try.  Because the government made no argument and put on no evidence below, the existence of the two independent source factors is not "supported by adequate findings by the district court," as this Court requires.  *Campbell*, 945 F.2d at 716.  Accordingly, the government

50

has waived any argument that the federal warrants in this case were "genuinely independent" of the tainted evidence discovered during the initial examination of Mr. Grinder's laptop. *Id.* This Court should hold the government to its waiver. *See Holland v. Big River Minerals Corp.*, 181 F.3d 597, 605 (4th Cir. 1999) ("[T]he failure to raise and preserve issue in district court waives consideration of that issue on appeal absent exceptional circumstances."); *United States v. Moussaoui*, 483 F.3d 220, 234 n.11 (4th Cir. 2007) ("Generally, issues that were not raised in the district court will not be addressed on appeal.").

> **2. The images illegally seized from Mr. Grinder's laptop affected investigators' decision to seek the federal warrants.**

If this Court addresses the government's waived argument for the first time on appeal, it should hold the government cannot shoulder its burden of showing it would have sought the federal warrants even without discovery of the images on Mr. Grinder's laptop. Other than those images, Agent Federico's affidavit relied primarily on three categories of evidence:

- information included in the state warrant application (e.g., Jane Doe's November 27, 2016 report to Alesha that Mr. Grinder had been abusing her, Jane Doe's statements to investigators on

51

November 28, 2016, and Alesha's allegation that Mr. Grinder

had given Jane Doe cough syrup containing narcotics); and

- the results of a December 16, 2016 forensic exam of Jane Doe

  that revealed "indications of a history of sexual abuse"; and

- a new allegation that on December 2, 2016, Alesha informed

  investigators that Jane Doe had told her "[Mr. Grinder] used his

  cell phone to videotape [Jane Doe] performing oral sex on [Mr.

  Grinder], and then 'put it on the TV.'"

S.J.A. 13-17.

Evidence in the first category does nothing to suggest Mr. Grinder

had been producing, receiving, or possessing child pornography, the

crimes identified in Agent Federico's affidavit.  S.J.A. 9.  That evidence

suggests Mr. Grinder had been abusing Jane Doe, but "evidence of child

molestation alone does not support probable cause to search for child

pornography."  *Doyle*, 650 F.3d at 472.  Thus this first category of evidence

supplies no reason to believe investigators would have sought warrants to

search for evidence of child pornography crimes.

The second category of evidence also suggests Mr. Grinder (or

someone else) may have been abusing Jane Doe.  But, like the first, it does

nothing to indicate Mr. Grinder had committed child pornography offenses. It therefore does not support the conclusion that investigators would have sought warrants to search for evidence of child pornography crimes.

That leaves the allegation that Mr. Grinder "used his cell phone to videotape [Jane Doe] performing oral sex on [Mr. Grinder], and then 'put it on the TV.'" S.J.A. 16. Law enforcement agents became aware of this information on December 2, 2016. S.J.A. 16. They did nothing further until February 2017, when the HSI analyst "imaged" and searched Mr. Grinder's laptop. J.A. 221. On March 16, 2017, investigators asked Jane Doe's aunt to look at a "sanitized" version of one of the images found on Mr. Grinder's laptop. S.J.A. 17. She confirmed that the child in the image was Jane Doe. S.J.A. 17. The next day, March 17, 2017, Agent Federico submitted his application in support of the federal warrants. S.J.A. 19.

This timeline strongly suggests it was the images found on Mr. Grinder's laptop—and not Jane Doe's new allegation that Mr. Grinder had recorded her on his phone—that prompted investigators to apply for the federal warrants. After learning of the filming allegation in December 2016, investigators did not immediately seek a warrant. Indeed, they did

nothing at all for over two months. This inaction indicates investigators

did not believe that the filming allegation, by itself, was sufficient reason to

seek a warrant. It was not until March 17, 2017—the day after Jane Doe's

aunt identified her niece in an image from Mr. Grinder's laptop—that

Agent Federico sought the federal warrants. That investigators applied for

the warrants so soon after tying Jane Doe to the images on Mr. Grinder's

laptop, and so long after learning of the filming allegation, demonstrates

that information from the illegal search of that laptop "affected . . . law

enforcement officers' decision to seek [the federal] warrant[s]." *Mowatt*,

513 F.3d at 404.[6]

---

[6] It is unclear why officers did not seek a warrant immediately after learning of the filming allegation. Perhaps they figured a second-hand accusation—relayed from Jane Doe to Alesha, and from Alesha to investigators—was unreliable. Or perhaps they suspected Alesha was not entirely credible. After all, Jane Doe told investigators that *both* her parents, not just Mr. Grinder, gave her cough medication that made her sleepy, and Alesha admitted to taking non-FDA-approved narcotics to treat her pain, which could affect her perception and memory. S.J.A. 15. Ultimately, however, this Court need not decide what motivated investigators. Whatever their reasons for not seeking a warrant on December 2, 2016, the fact remains that the filming allegation was not reason enough, in investigators' minds, to seek a warrant. It is therefore clear that the images found on Mr. Grinder's laptop—i.e., the only other evidence in Agent Federico's affidavit that is indicative of child pornography offenses—affected the decision to seek the federal warrants.

Moreover, even if the government could establish that investigators would have sought a warrant for Mr. Grinder's <u>phone</u> absent the illegally seized images, there is no reason to believe they would also have sought a warrant to search his <u>laptop</u>. Jane Doe alleged Mr. Grinder had recorded her on his cell phone and then "put it on the TV"; she did not say anything about Mr. Grinder's laptop. S.J.A. 16. The only information tying the laptop to child pornography was the images discovered during the initial examination of that device. Thus those images clearly affected investigators' decision to seek a warrant <u>for the laptop</u>.

The government cannot save the federal warrants by noting Agent Federico's affidavit asserts that (1) "[i]ndividuals who have a sexual interest in children or images of children *may* collect sexually explicit or suggestive materials," and that (2) when they do so, they "often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer." S.J.A. 10-11 (emphasis added). It is of course true that people with a sexual interest in children "may" collect sexually explicit images of children. It does not follow, however, that they are *likely* to do so, or that police have *probable cause to believe* such people actually possess such images. People with a sexual

55

interest in children "may" smoke marijuana as well, but this fact does not demonstrate probable cause to search such people's homes for drugs. Some greater degree of probability is required. *Cf. United States v. Gourde*, 440 F.3d 1065, 1072 (9th Cir. 2006) (explaining warrants can be valid if they assert possessors of child pornography "often" or "generally" retain those materials for extended periods of time).

And in any event, even if Agent Federico's boilerplate profile information would suffice to demonstrate probable cause, this fact does not demonstrate that investigators would actually have sought the federal warrant for Mr. Grinder's laptop had they not discovered the images on that device. Police do not apply for a warrant every time they have probable cause. This Court cannot simply assume that, based on a single allegation involving Mr. Grinder's cell phone, investigators would have sought a warrant for his laptop as well.

> **3.    Stripped of the illegally seized images, Agent Federico's affidavit does not establish probable cause to search Mr. Grinder's laptop.**

The government also cannot show that the images recovered from the initial examination of Mr. Grinder's laptop did not "affect[] . . . the magistrate's decision to grant [the federal warrant]" for that device.

*Mowatt*, 513 F.3d at 404.  When deciding this question, courts "examine[]

the search warrant affidavit absent the illegally-obtained information, to

determine whether the untainted portion of the affidavit set forth probable

cause."  *United States v. Walton*, 56 F.3d 551, 554 (4th Cir. 1995).

With all reference to the illegally seized images removed, Agent

Federico's affidavit purports to establish probable cause based on: (1) Jane

Doe's statements to Alesha and law enforcement in November 2016, (2) the

results of Jane Doe's December 16, 2016 medical exam, (3) Jane Doe's

December 2, 2016 statement that Mr. Grinder filmed her on his cell phone,

and (4) an assertion that people "who have a sexual interest in children or

images of children *may* collect sexually explicit or suggestive material."

S.J.A. 10 (emphasis added).  The first and second categories do nothing to

demonstrate Mr. Grinder committed child pornography offenses.  *Doyle*,

650 F.3d at 472.  The third category does suggest Mr. Grinder may have

child pornography on his phone, but it does not establish a nexus between

child pornography and his laptop.  And for the reasons explained above,

the fourth category—which simply asserts that people like Mr. Grinder

"may" collect child pornography—adds nothing.

57

Agent Federico's affidavit, once cleansed of the images illegally seized from the initial examination of the laptop, does not give rise to probable cause to search that device for child pornography. Accordingly, evidence seized pursuant to the federal laptop warrant does not come from an "independent source," and it must therefore be suppressed. *Mowatt*, 513 F.3d at 403-04; *see Walton*, 56 F.3d at 554.

### 4. The good faith exception does not apply.

This Court has held the good faith exception to the exclusionary rule does not apply when (1) police obtain a warrant based in part on illegally seized evidence, and (2) the government is unable to show that officers' "decision to seek the warrant—and thus involve the magistrate—was not prompted by the original illegal search." *Mowatt*, 513 F.3d at 405. That is the case here. As explained above, the images illegally seized from Mr. Grinder's laptop were described in Agent Federico's affidavit, and they affected investigators' decision to seek the federal warrants. The good faith exception is inapplicable.

**IV.  The government's four-month delay in obtaining the federal warrant for Mr. Grinder's cell phone was unreasonable.**

### A.    Standard of review

With respect to the length of law enforcement's delay in seeking a warrant, this Court "review[s] the factual findings in a suppression motion for clear error and the legal conclusions de novo."  *Pratt*, 915 F.3d at 271.

### B.    Argument

The government argued in district court that, even if Mr. Grinder's cell phone fell outside the scope of the state warrant, officers could lawfully seize the phone because they (1) had probable cause to arrest Mr. Grinder, and (2) faced exigent circumstances, i.e., Mr. Grinder's possible destruction of evidence on his phone upon learning that police planned to execute a search warrant at his home.  J.A. 85-86 (citing *Cupp v. Murphy*, 412 U.S. 291 (1973)).  Assuming for sake of argument that the warrantless seizure of the phone was proper, however, all evidence discovered on the phone still must be suppressed because investigators waited almost four months to

obtain a warrant authorizing a search of that phone, i.e., the federal warrant.  This delay was unreasonable.[7]

"A seizure that is lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests." *Pratt*, 915 F.3d at 271.  To determine whether "an extended seizure violates the Fourth Amendment, [this Court] balance[s] the government's interest in the seizure against the individual's possessory interest in the object seized." *Id.*  In *Pratt*, where police lawfully seized a phone without a warrant and did not seek a search warrant for 31 days, this Court held the delay to be unreasonable. *Id.* at 270, 273.  Law enforcement agents in that case "failed to exercise diligence" in applying for a warrant, and the government therefore "ha[d] no persuasive justification" for the 31-day delay. *Id.* at 272.  As a result, the delay infringed the defendant's possessory interest in the phone, and all evidence

---

[7] The government never argued below that the combination of probable cause to arrest and exigent circumstances permitted police to search the phone, as opposed to simply seizing it to preserve the status quo as they sought a warrant.

eventually recovered from the phone should have been suppressed. *Id.* at 272-73.

Here, officers seized Mr. Grinder's cell phone on November 29, 2016, and did not apply for a warrant to search it until March 17, 2017. In response to Mr. Grinder's argument below that this delay was unreasonable, *see* J.A. 88-89, 196-201, the government never attempted to explain why applying for a warrant could legitimately require nearly four months. It merely argued, instead, that officers did not need to apply for a warrant at all because the state warrant already authorized a search of the phone. J.A. 90, 222-27, 229-30. The government therefore failed to establish it had any legitimate interest in such an extended delay. And even if the government could come up with some supposed interest at this late stage, it is hard to imagine how that interest could justify a delay of four months. If the 31-delay in *Pratt* was unreasonable, then the delay in this case, which was nearly four times longer, was unreasonable as well.

All evidence recovered from Mr. Grinder's cell phone pursuant to the federal warrant should have been suppressed.[8]

## Conclusion

The state warrant was overbroad insofar as it permitted seizure of all cell phones and computers in Mr. Grinder's home. Even if the seizure of Mr. Grinder's devices was proper, the HSI analyst exceeded the scope of the state warrant by searching parts of the laptop other than the internet browser's search history. The federal warrants were therefore tainted by illegally seized evidence. The independent source doctrine cannot save the federal warrants, as the images from the initial examination of the laptop affected both officers' decision to seek the federal warrants and, at least with respect to the laptop, the magistrate's decision to grant them. Finally, assuming a warrantless seizure of Mr. Grinder's phone was proper, investigators unreasonably delayed four months in seeking a search warrant.

---

[8] The government did not argue below that any exception to the warrant requirement justified seizure of the laptop. Mr. Grinder's unreasonable-delay argument is therefore inapplicable to the federal warrant for that device.

62

All evidence found on both devices should have been suppressed.


                    James Wyda
                    Federal Public Defender
                    Cullen Macbeth
                    Assistant Federal Public Defender
                    100 S. Charles Street
                    Tower II, 9th Floor
                    Baltimore, MD 21201
                    (410) 962-3962


                    /s/ Cullen Macbeth
                    Cullen Macbeth

## Statement Regarding Oral Argument

Counsel for Appellant respectfully requests oral argument so that the issues above can be more fully presented for the Court's consideration.

## Certificate of Compliance

1. This brief has been prepared in Microsoft Word using 14-point, proportionally spaced, serif typeface.

2. Excluding the items identified in Federal Rule of Appellate Procedure 32(f), this brief contains 12,922 words.

/s/ Cullen Macbeth
Cullen Macbeth
Assistant Federal Public Defender

## Certificate of Service

I certify that on September 19, 2019, I electronically filed the foregoing brief with the Clerk of Court using the CM/ECF system, which will send notice of such filing to the following registered CM/ECF users: Paul Budlow and Paul Riley, Assistant U.S. Attorneys, Office of the U.S. Attorney, 36 South Charles Street, 4th Floor, Baltimore, MD 21201.


/s/ Cullen Macbeth
Cullen Macbeth
Assistant Federal Public Defender