No. 19-4392

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

Appellee,

v.

ERIC WAYNE GRINDER,

Appellant.

*Appeal from the United States District Court for the
District of Maryland, Northern Division
The Honorable Catherine C. Blake, United States District Judge*

BRIEF OF APPELLEE
UNITED STATES OF AMERICA

> **Robert K. Hur**
> **United States Attorney**
>
> **Paul A. Riley**
> **Paul E. Budlow**
> **Assistant United States Attorneys**
>
> **36 S. Charles Street, 4th Floor**
> **Baltimore, Maryland 21201**
> **(410) 209-4800**

**October 31, 2019**             *Attorneys for the Appellee*

# TABLE OF CONTENTS

STATEMENT OF JURISDICTION ........................................................1

STATEMENT OF THE ISSUES ..........................................................1

STATEMENT OF THE CASE............................................................2

STATEMENT OF FACTS ................................................................4

   I.   Factual Background ................................................................4

      A.   Initial Investigation..........................................................4

      B.   State Law Enforcement Obtains And Executes The State Warrant And Provides the Defendant's Laptop to Forensic Examiner ....................6

      C.   Federal Search Warrants, Defendant's Arrest, and Defendant's Obstruction Of Justice ....................................................8

      D.   Forensic Review Of Defendant's Devices .........................................12

         a.  Possessed Images – Count Seven....................................................13

         b.  Produced Images – Count One....................................................14

         c.  Produced Video – Count Two....................................................14

         d.  Produced Video – Count Three....................................................15

         e.  Produced Video – Count Four ....................................................15

         f.  Produced Image – Count Five....................................................15

i

g.  Produced Image – Count Six ......................................................16

SUMMARY OF ARGUMENT ...............................................................16

ARGUMENT ...........................................................................................19

I.    THE STATE WARRANT WAS SUPPORTED BY AMPLE
      PROBABLE CAUSE TO SEIZE DEFENDANT'S CELL PHONE
      AND LAPTOP...............................................................................19

      A.    Standard of Review ...........................................................19

      B.    Applicable Law ..................................................................19

      C.    The Seizure Of Defendant's Laptop And Cell Phone Was Supported By
            Probable Cause ...................................................................21

      D.    The Good Faith Exception Applies......................................32

II.   THE INITIAL SERACH PURSUANT TO THE STATE WARRANT
      DID NOT EXCEED THE STATE WARRANT'S SCOPE .........................35

      A.    Standard of Review ...........................................................35

      B.    The District Court Properly Concluded That The Initial Search of
            Defendant's Laptop Did Not Exceed What Was Permitted by the State
            Warrant ..............................................................................36

      C.    The Good Faith Exception Applies......................................46

III.  THE FEDERAL WARRANTS, AS EXCISED, ARE STILL
      SUPPORTED BY PROBABLE CAUSE.......................................................48

ii

IV.    THERE WAS NO DELAY IN OBTAINING A WARRANT TO
       SEIZE AND SEARCH DEFENDANT'S CELL PHONE............................54

CONCLUSION.........................................................................................58

STATEMENT REGARDING ORAL ARGUMENT ............................................59

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

iii

# TABLE OF AUTHORITIES

## Cases

*Buoncore v. Harris*, 65 F.3d 65 F.3d 347 (4th Cir. 1995) .......................................48

*Illinois v. Gates*,
   462 U.S. 213 (1983)...................................................................... passim

*Illinois v. McArthur*,
   531 U.S. 326 (2001).............................................................................56

*Peffer v. Stephens*,
   880 F.3d 256 (6th Cir. 2018) ..............................................................24

*Soldal v. Cook Cnty.*,
   506 U.S. 56 (1992)...............................................................................56

*United States v. Abraham*,
   213 F. App'x 240 (4th Cir. 2007) .......................................................20

*United States v. Allen*,
   631 F.3d 164 (4th Cir. 2011) ..............................................................49

*United States v. Anderson*,
   851 F.2d 727 (4th Cir. 1988) ..............................................................20

*United States v. Angelos*,
   433 F.3d 738 (10th Cir. 2006) .............................................................47

*United States v. Basham*,
   789 F.3d 358 (4th Cir. 2015) ..............................................................49

*United States v. Bosyk*,
   933 F.3d 319 (4th Cir. 2019) ...................................................... 28, 53

*United States v. Burgess*,
   576 F.3d 1078 (10th Cir. 2009) .................................................. passim

*United States v. Burke*,

633 F.3d 984 (10th Cir. 2011) ...................................................................27

*United States v. Burton*,

756 F. App'x 295 (4th Cir. 2018) ...........................................................34

*United States v. Christie,*

717 F.3d 1156 (10th Cir. 2013) ......................................................... 39, 57

*United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162 (9th Cir. 2010)

...............................................................................................................37

*United States v. Crespo-Rios*,

645 F.3d 37 (1st Cir. 2011)............................................................... 36, 43

*United States v. Curzi*,

867 F.2d 36 (1st Cir. 1989)......................................................................48

*United States v. Dargan*,

738 F.3d 643 (4th Cir. 2013) ........................................................... 27, 40

*United States v. Doyle*,

650 F.3d 460 (4th Cir. 2011) ...................................................................44

*United States v. Emanuel*,

440 F. App'x 881 (11th Cir. 2011) .........................................................56

*United States v. Ewain*,

88 F.3d 689 (9th Cir. 1996) .....................................................................48

*United States v. Galpin*,

720 F.3d 436 (2d Cir. 2013) ....................................................................37

*United States v. Ganias*,

824 F.3d 199 (2d Cir. 2016) .......................................................... 36, 40, 43

*United States v. Gillenwaters*,

    890 F.2d 679 (4th Cir. 1989) ...............................................................49

*United States v. Gourde*,

    440 F.3d 1065 (9th Cir. 2006) ...........................................................53

*United States v. Green*,

    740 F.3d 275 (4th Cir. 2014) ...............................................................19

*United States v. Gregoire*,

    638 F.3d 962 (8th Cir. 2011) ....................................................... 55, 57

*United States v. Griffith*,

    867 F.3d 1265 (D.C. Cir. 2017)................................................. passim

*United States v. Grinder*,

    No. Cr. CCB-17-226, 2018 WL 2943235 (D. Md. June 12, 2018)............. passim

*United States v. Grossman*,

    400 F.3d 212 (4th Cir. 2005) ...............................................................21

*United States v. Hager*,

    710 F.3d 830 (8th Cir. 2013) ...............................................................47

*United States v. Hill*,

    852 F.3d 377 (4th Cir. 2017) ...............................................................19

*United States v. Hodge*,

    354 F.3d 305 (4th Cir. 2004) ...............................................................50

*United States v. Holtzclaw*,

    No. 1:18CR46-1, 2018 WL 3128999 (M.D.N.C. June 26, 2018) .......................30

*United States v. Jackson*,

    No. 17-20510, 2018 WL 2220277 (E.D. Mich. May 15, 2018)...........................30

vi

*United States v. Jacobson,*

    4 F. Supp. 3d 515 (E.D.N.Y. 2014) .......................................................27

*United States v. Karo,*

    468 U.S. 705 (1984).................................................................................50

*United States v. Laist,*

    702 F.3d 608 (11th Cir. 2012) ...............................................................56

*United States v. Leon,*

    468 U.S. 897 (1984)................................................... 33, 46, 47, 48, 56

*United States v. Loera,*

    923 F.3d 907 (10th Cir. 2019) ................................................ 44, 45, 46

*United States v. Long,*

    797 F.3d 558 (8th Cir. 2015) .................................................................48

*United States v. Lyons,*

    740 F.3d 702 (1st Cir. 2014)..................................................................20

*United States v. Manafort,*

    314 F. Supp. 3d 258 (D.D.C. 2018).......................................................28

*United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars &*

    *Fifty-Seven Cents ($92,422.57),*

    307 F.3d 137 (3d Cir. 2002) .................................................................32

*United States v. Olano,*

    507 U.S. 725 (1993)...............................................................................35

*United States v. Perez,*

393 F.3d 457 (4th Cir. 2004) .......................................................................48

*United States v. Pratt,*

    915 F.3d 266 (4th Cir. 2019) .................................................... 55, 58

vii

*United States v. Qazah*,

   810 F.3d 879 (4th Cir. 2015) .................................................................33

*United States v. Richards*,

   659 F.3d 527 (6th Cir. 2011) ....................................................... 37, 41

*United States v. Richardson*,

   607 F.3d 357 (4th Cir. 2010) .................................................................54

*United States v. Schesso*,

   730 F.3d 1040 (9th Cir. 2013) ..............................................................38

*United States v. Srivastava*,

   540 F.3d 277 (4th Cir. 2008) .................................................................35

*United States v. Stabile,*

633 F.3d 219 (3d Cir. 2011)......................................... 37, 38, 43, 56, 59

*United States v. Syphers*,

   426 F.3d 461 (1st Cir. 2005)..................................................................57

*United States v. Ulbricht*,

   858 F.3d 71 (2d Cir. 2017) ......................................................... 36, 44

*United States v. Vanderweele*,

   545 F. App'x 465 (6th Cir. 2013) .........................................................21

*United States v. Veillette*,

   778 F.2d 899 (1st Cir. 1985)..................................................................49

*United States v. Wienke*,

   733 F. App'x 65 (4th Cir. 2018) ................................................. 20, 24

*United States v. Williams*,

   592 F.3d 511 (4th Cir. 2010) ..................................................... passim

*United States v. Wright*,

   991 F.2d 1182 (4th Cir. 1993) ...................................................................50

*Zurcher v. Stanford Daily*,

   436 U.S. 547 (1978)...................................................................................20

**Statutes**

18 U.S.C. § 1512(b)(1).................................................................................2

18 U.S.C. § 2251(a) .....................................................................................2

18 U.S.C. § 2252(a)(4)(B) ...........................................................................2

18 U.S.C. § 3231 ..........................................................................................1

28 U.S.C. § 1291 ..........................................................................................1

**Rules**

Fed. R. Evid. 901(b)(4) ..............................................................................43

## STATEMENT OF JURISDICTION

The district court (Catherine C. Blake, D.J.) had jurisdiction over this federal criminal case pursuant to 18 U.S.C. § 3231.  This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

I.      Whether the district court properly denied Defendant's motion to suppress evidence seized from Defendant's cell phone and laptop where the search warrant affidavit for Defendant's residence contained evidence that the Defendant (1) sexually abused a minor living at the residence; (2) drugged the minor using drugs that he purchased over the Internet; and (3) discussed the abuse and drugs he purchased over the Internet by text message on his mobile phone.

II.     Whether the district court properly denied Defendant's motion to suppress evidence seized from Defendant's laptop where the examiner of the laptop discovered child pornography images while searching for evidence of child sex abuse and drugs, and suspended his search upon discovery of the images so that investigators could obtain a follow-up warrant authorizing a search for evidence relating to child pornography.

III.    Whether the district court properly denied Defendant's motion to suppress evidence of child pornography seized from Defendant's cell phone and

1

laptop during the execution of a follow-up warrant that authorized a search for evidence of child pornography and included evidence in its supporting affidavit of Defendant's abuse and drugging of the minor from the initial warrant.

IV.     Whether the district court properly denied Defendant's motion to suppress evidence seized from Defendant's cell phone where law enforcement obtained a warrant authorizing their possession and search of it no more than 20 minutes after its seizure and later obtained a follow-up warrant to search it for evidence of child pornography.

## STATEMENT OF THE CASE

On January 23, 2019, a federal grand jury returned a third superseding indictment that charged the defendant with: one count of attempted production of child pornography, in violation of 18 U.S.C. § 2251(a); five counts of production of child pornography, in violation of 18 U.S.C. § 2251(a); two counts of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B); and one count of witness tampering, in violation of 18 U.S.C. § 1512(b)(1).  JA 38-47.

The child pornography charges arise out of Defendant's filming of his sexual abuse of his adopted daughter, Jane Doe, from approximately June 2013 through August 2016.  JA 38-45.  The witness tampering charges arise out of Defendant's attempt, after his arrest and detention, to have his sister contact Jane Doe and

coach the child to recant her earlier statements to her mother and law enforcement that Defendant had sexually abused her.  JA 46.

The depictions of Defendant abusing Jane Doe and other child pornography were located on certain of Defendant's electronic devices, which were seized by law enforcement on November 29, 2016, during the execution of a state search warrant at Defendant's home.  JA 336-42.

The images of abuse referenced in Count One, as well as of other child pornography referenced in Count Seven, were located on Defendant's Toshiba laptop seized on November 29, 2016.  JA 38, 44.  The images of abuse referenced in Counts Four, Five, and Six were located on Defendant's phone, which was also seized on November 29, 2016.  JA 42-43, 45.  The videos of abuse referenced in Counts Two, Three, and Four were located on a SanDisk SD card within Defendant's phone.  JA 39-41.

On December 18, 2017, Defendant moved to suppress all evidence seized from the laptop, cell phone, and SD card.  JA 48-60.  The Government filed a response.  SJA 36-56.  Both parties filed supplemental briefing.  JA 85-91.

After holding an evidentiary hearing, JA 92-110, the district court on June 12, 2018, issued a memorandum opinion denying Defendant's motion. JA 180-

191; *United States v. Grinder*, No. Cr. CCB-17-226, 2018 WL 2943235 (D. Md. June 12, 2018).

On February 12, 2019, Defendant filed a motion for reconsideration of the district's decision on his motion to suppress. JA 196. On February 19, 2019, a jury trial commenced, JA 239; that same day, the district court denied the motion for reconsideration. JA 311-12.

On February 22, 2019, the jury convicted Defendant on all counts. JA 560-563. The district court sentenced Defendant to 360 months' imprisonment and lifetime supervised release. JA 822-23. This timely appeal followed.

## STATEMENT OF FACTS

## I.  FACTUAL BACKGROUND

### A.    Initial Investigation

On the evening of November 27, 2016, Alisha Grinder, Defendant's wife, woke up and noticed that Defendant was not in bed with her at the couple's home located at 261 Montpelier Court in Westminster, Maryland. JA 128. She got out of bed and saw Defendant in the hallway outside of Jane Doe's room. JA 129. Jane Doe was born in 2006 and was 10 years old at the time. JA 435.

Ms. Grinder asked Defendant what he was doing, and he said that he was giving Jane Doe cough medicine. JA 456. Jane Doe was not sick at the time, did

4

not have a cough, and Ms. Grinder noticed that during the conversation

Defendant's demeanor was strange:  Defendant didn't make eye contact with Ms.

Grinder and, after the conversation, slept downstairs—not returning to their

bedroom.  JA 456-57.

      After this exchange with Defendant, Ms. Grinder had a conversation with

Jane Doe, in which she disclosed Defendant's abuse of her.  JA 457; SJA 60.  After

that conversation, both Ms. Grinder and Jane Doe went back to sleep.  JA 457.

      On November 28, 2016, Ms. Grinder was interviewed by law enforcement,

and she and Jane Doe left 261 Montpelier Court and began living with Ms.

Grinder's parents in Abingdon, Maryland.  JA 458; SJA 60.

      On November 29, 2016, law enforcement interviewed Jane Doe.  SJA 61.

During that interview, Jane Doe informed her interviewers in substance that: (1)

Defendant abused her multiple times over a period of years, including by touching

her genitals, penetrating her vagina, and pushing her mouth on to his penis; and (2)

the abuse occurred in both Abingdon, Maryland at her family's previous residence

and at her current residence at 261 Montpelier Court in Westminster, Maryland.

SJA 61.

**B. State Law Enforcement Obtains And Executes The State Warrant And Provides The Defendant's Laptop To A Forensic Examiner**

On November 29, 2016, at 6:15 pm, a state search and seizure warrant was authorized for Defendant's residence at 261 Montpelier Court (the "State Warrant") for evidence relating to the following crimes:  abuse of a minor child, 2nd degree rape, 2nd and 3rd degree sexual offenses, and continuing course of sex abuse of a minor.  SJA 57-58.   The State Warrant specifically provided for the search and seizure of evidence of relating to such crimes, including phones and computers.  *Id.*

The affidavit in support of the warrant established among other things:  (1) that Defendant used an unspecified Internet-capable device to "order[] drugs via the Internet and [then] ha[d] it sent to the house;" (2) that Defendant understood that he possessed a "Schedule 1 Narcotic" and "controlled substance that [he] bought;" (3) that Ms. Grinder believed that Defendant had drugged Jane Doe at least once and that Jane Doe's urine had tested positive for Benzodiazepines; (4) that [Jane Doe] had disclosed to her mother that the Defendant had been sexually abusing her; and (5) that Defendant used his cell phone to engage in numerous text message conversations with Ms. Grinder concerning his possession of the drugs and Jane Doe's disclosure of abuse.  SJA 60-62.

6

On November 29, 2016, at approximately 5:05 pm, Corporal Michael Lare of the Carroll County Sheriff's Office, responded to the residence of Defendant at 261 Montpelier Court in Westminster, Maryland to assist in the execution of a search and seizure warrant at the residence.  JA 94-95, 100.

At approximately 5:56 pm, Defendant arrived in his car and parked in the driveway of his home.  JA 103.  Defendant got out of his car.  *Id.* Corporal Lare then approached him and, while he and Defendant were still on the driveway of the residence, Corporal Lare seized Defendant's phone—a Samsung SM-G900V.  JA 103.

At approximately 6:05 pm, Deputy David Roys of the Carroll County Sherriff's Office responded to 261 Montpelier Court in Westminster, Maryland, and Corporal Lare provided Defendant's phone to Deputy Roys.  JA 105-06; JA 336.  Shortly thereafter, Detective John Emminizer of the Westminster City Police Department responded to 261 Montpelier Court in Westminster, Maryland, and Deputy Roys provided Defendant's phone to Detective Emminizer.  JA 337.

In addition to Defendant's Samsung phone, among the items seized pursuant to the warrant were a purple polka dot blanket and a Toshiba laptop. JA 340-42. The blanket belonged to Jane Doe.  JA 462.  The Toshiba laptop belonged to Defendant, and he was its only user.  JA 451.

On December 19, 2016, state investigators provided Defendant's laptop to a forensic analyst with the Department of Homeland Security, Steven Gibson, in connection with the state case before federal investigators were involved.  JA 221, JA 353.  During his review of the laptop pursuant to the State Warrant, Gibson discovered child pornography on the laptop, including images of what he understood to be Jane Doe performing fellatio on an adult male's penis and an image of Jane Doe touching an adult male's penis.  JA 221; SJA 84.

Upon discovering the child pornography, Gibson, out of an abundance of caution, suspended his examination so that a warrant to search for evidence of child pornography offenses could be obtained.  SJA 84; JA 221, 234.

## C. Federal Search Warrants, Defendant's Arrest, And Defendant's Obstruction Of Justice

On March 17, 2017, Special Agent Richard Federico of the U.S. Department of Homeland Security opened an investigation into Defendant.  JA 270.  He saw the images from Defendant's laptop that appeared to capture Jane Doe's abuse.  JA 270-72.  The abuser was an adult male wearing an orange shirt and blue pajama pants with an orange or red drawstring.  JA 270.  There appeared to be a marbling effect on the back wall of the room where the abuse occurred.  JA 271.

8

On March 17, 2017, Agent Federico obtained federal warrants to search

Defendant's residence at 261 Montpelier Court, the Defendant's Toshiba laptop,

and his Samsung cell phone (the "Federal Warrants"). JA 272. The affidavit

provided in support of the Federal Warrants provided that: (1) the pornographic

images suspected by the forensic examiner to be of Jane Doe were in fact her, SJA

85 ¶ 26; (2) a December 16, 2016, Pediatric Sexual Assault Forensic Examination

further confirmed the extent of the abuse of Jane Doe; the doctor performing the

examination noted that the child's hymen was absent, which was "[d]iagnostic of

prior penetrating trauma to the vagina;" SJA 84 ¶ 22; and (3) Jane Doe told her

mother that Defendant had used his cell phone to videotape Jane Doe performing

oral sex on him and then "put it on the TV," *id.* ¶ 21. The affidavit likewise

included significant profile information—based on Agent Federico's knowledge,

training, and experience—concerning individuals who have a sexual interest in

children and their use of technology in connection with that interest. SJA 78-81.

This included averments that child pornography is often stored on computers, cell

phones, and other electronic devices over which the pedophile can maintain control

of them. SJA 78-79.

On March 21, 2017, Defendant was arrested, and law enforcement executed

the warrant for Defendant's residence. SAJ 41. During the execution of the

warrant, law enforcement recovered an orange shirt with holes at the bottom of it, the appearance of which was consistent with the appearance of the orange shirt in the images of the abuse of Jane Doe.  JA 282.

However, there was not much clothing in the house and, accordingly, Agent Federico later that day obtained a federal warrant to search an outbuilding in Union Bridge, Maryland that belonged to Defendant's mother, Leann Martin.  JA 280, 284.  During the execution of the warrant at Ms. Martin's outbuilding, law enforcement recovered, among other things, a pair of blue pajama pants with a red or orange drawstring, the appearance of which was consistent with the pants in the images of the abuse of Jane Doe.  JA 288.

On April 13, 2017, Agent Federico visited 122 Laurel Valley Court in Abingdon, Maryland—Defendant, Ms. Grinder's, and Jane Doe's past residence— in an attempt to identify the background in the images of the abuse of Jane Doe that he had previously seen.  JA 293-94.  While in the master bedroom of the home, Agent Federico noticed a marbling effect on the bedroom wall that was created by glass housing around the lightbulbs in the overhead fan.  JA 294.  The appearance of this marbling effect was consistent with the marbling effect that appeared in the images of the abuse of Jane Doe.  JA 294-95.

10

On May 4, 2017, Defendant had his initial appearance on his federal child pornography charges at the federal courthouse in Baltimore.  JA 297.

In July 2017, Defendant sent his sister, Kayla Martin, a piece of mail that was intercepted and copied by officials at the Carroll County Detention Center and then placed back in the mail stream.  JA 298-99, 301.  The letter was in code—the alphabet backwards (26 for A, 25 for B, etc.).  JA 303.  Agent Federico decoded the letter, and a key for the code was later recovered from Defendant's cell at the Carroll County Detention Center.  JA 305. The letter stated in part:

> Contact [Jane Doe] if you can[.]  Talk to [Jane Doe] and just gain her ear I [r]eally need her to say I didn't do anything and any pictures she used my phone while I was asleep.  It is the only way I get to see my kids again.  Let her know she will not be in trouble[.]  It seems whatever they have there is no proof I took them.  I need her to understand that I will be in jail forever and Ill never be able to see the boys[.]  . . . Tell [Jane Doe] I love her please[.]

JA 304.

On November 7, 2018, Agent Federico obtained a warrant to seize Defendant's ring from LeAnn Martin's home in Union Bridge, Maryland after observing a ring in a suspect video file recovered from the SD card within

11

Defendant's phone. JA 306. On November 9, 2018, Agent Federico executed the warrant and seized the ring. JA 307-08.

### D. Forensic Review Of Defendant's Devices

Acting pursuant to the Federal Warrants, computer forensic analyst Gibson conducted a forensic examination of Defendant's devices—his Samsung phone (including the SD card within it), and his Toshiba laptop computer. JA 352-53.

Gibson discovered that the laptop had the eMule file-sharing program installed on it, and that he recovered an eMule search history log reflecting a single search term, PTHC (meaning pre-teen hardcore), a term referencing child pornography. JA 382. He further learned that the laptop contained various google searches, including "incest rape movies," "pthc movies," "virgin rape movies," "preteen rape movies," "daddy daughter rape movies," and "daughter rape movies." JA 388-89, 658.

Similarly, regarding the Samsung phone, Gibson located the search history from a privacy-focused app called Duck Duck Go. JA 393. The Duck Duck Go history contained numerous search terms indicative of child pornography, incest and child rape, including the following terms: "Tiny daughter taboo," "Cum in daughter," "Incest daughter," "Can a passed out girl orgasm," "How to make a girl

12

orgasm with a vibrator," "Will a penis fit in a 10 year old," "Dads camera," and "Daddy daughter porn."  JA 393-94, JA 716-23.  The Duck Duck Go search history likewise reflected the existence of numerous search terms reflecting an interest in the drugging of minors for the purpose of sex, including "drugged teen sex," "real teen drugged abused," "real teen drugged sex," "drugged raped teens," "best drug to knock someone out," "research chemical rohypnol," "research chemical for ketamine," "how to slip a girl an ambien," "sleeping teens being violated," "strongest benzo research chemical," "passed out teens sex," "buy u-44770 drug," "forcing your kid to take medicine," "how to stretch a vagina before sex," and "sex with girl from behind sleeping."  SJA 116.

### a.  Possessed Images – Count Seven

Gibson also located various images of child pornography on Defendant's devices.  On the laptop, he located three "known images" of child pornography in the laptop's thumbnail image cache, including an image from the "Vicki" series, which referred to a specific child pornography victim whose images he had encountered in previous investigations.  JA 402-04.

13

### b. Produced Images – Count One

Gibson likewise located nine images of child pornography charged in Count One of the Indictment, including images depicting Jane Doe[1] with her mouth on an adult male's penis and touching an adult male's penis. JA 413-418. Ms. Grinder identified the background in the images as being the master bedroom of 122 Laurel Valley Court, where she Defendant, and Jane Doe resided before moving to the Westminster residence; she also identified Jane Doe in the images. JA 461-62, 447.

### c. Produced Video – Count Two

Gibson located a video of interest on the SD card within Defendant's Samsung phone. JA 419. The video depicted a hand next to Jane Doe's inner thigh moving in and out of frame. JA 420. A ring was visible on the hand. *Id.* Ms. Grinder identified the ring captured by the video as being Defendant's wedding band and testified that it was identical to the ring that was seized by law enforcement from Ms. Martin's residence. JA 462.

---

[1] Defendant stipulated that the victim depicted in each of the produced images of child pornography was Jane Doe. JA 412-13.

14

### d. Produced Video – Count Three

Gibson located another video of interest on the SD card within Defendant's Samsung phone. JA 425-26. The video depicted an adult male penetrating Jane Doe's vagina with a finger and then touching it with a vibrator. JA 426. Jane Doe does not move during the video and, at the end of the video, a patterned blanket, including white polka-dots and butterflies, is visible in the frame. JA 426. Ms. Grinder knew Defendant to have a vibrator. JA 450.

### e. Produced Video – Count Four

Gibson located a third video of interest on the SD card within Defendant's Samsung phone. JA 427. The video depicts an adult male hand penetrating Jane Doe's vagina with his finger. JA 427. A purple polka dot blanket is visible in the frame. *Id.* Jane Doe does not move during the video. JA 428.

### f. Produced Image – Count Five

Gibson also located images of Jane Doe on Defendant's phone. JA 429. One image depicts Jane Doe's legs open with her vagina exposed. JA 430. A blanket with purple, pink, and blue flowers on it is visible just above her vagina. JA 430. Ms. Grinder identified the blanket in the image as belonging to Jane Doe

15

and stated that she had it at both 122 Laurel Valley Court and 261 Montpelier Court.  JA 446, 462.

### g.  Produced Image – Count Six

Gibson located two additional images of Jane Doe on Defendant's Samsung phone.  JA 432.  One image depicts Jane Doe's legs open with her vagina exposed. JA 432-33.  Part of a yellow blanket is visible just above her vagina, along with a white sheet or blanket.  JA 433.  Ms. Grinder identified the yellow blanket as belonging to Jane Doe.  JA 466.

The other image depicts Jane Doe's legs open with her vagina exposed.  Part of a yellow blanket is visible just above her vagina, along with a white sheet or blanket.  JA 433.  Blue cloth is visible beneath her legs.  *Id.*

After three days of trial, the jury found Defendant guilty on all charges.  JA 759-60.  This appeal followed.

## SUMMARY OF ARGUMENT

The district court properly denied Defendant's motion to suppress.

*First*, the judge that approved the State Warrant authorizing a search of Defendant's residence had more than a substantial basis for finding probable cause to support the seizure of Defendant's laptop and cell phone in light of, among other

16

things, statements in the affidavit summarizing:  (1) Defendant's abuse of Jane
Doe; (2) his purchase of drugs over the Internet; (3) his suspected drugging of Jane
Doe using those drugs; and (4) text messages between Defendant and Alisha
Grinder concerning the abuse and drugs.  The abuse took place in the residence.  It
is reasonable to assume that a person keeps his possessions, including his laptop
and cell phone, where he resides.  And the affidavit in support of the State Warrant
did nothing to suggest that Defendant had left his residence indefinitely or that he
would not be at the residence when the warrant was executed—as he ultimately
was.  Further, the fact that law enforcement did not know precisely whether
Defendant purchased the drugs using his phone or his laptop is irrelevant.  They
knew he used an "internet connected device" and that was sufficient to justify
search and seizure of his laptop and cell phone.  Alternatively, the good faith
exception applies.

*Second*, the initial examination pursuant to the State Warrant did not exceed
the warrant's scope because evidence of Defendant's sexual abuse of Jane Doe—
and his purchase of drugs over the Internet—could have been located anywhere on
the laptop.  Accordingly, the examiner was authorized to open and view all the
files on the laptop, at least cursorily, to determine whether they fall within the
warrant's scope.  Further, Defendant chose not to make a record in the district

concerning: (1) the methodology the forensic examiner employed during the examination of the laptop to begin with; or (2) how, if at all, the examination could have been done differently. Defendant's speculation that the laptop's "browser history" is the sole location where evidence of Defendant's crimes could be found on the laptop not only is factually wrong, but, if employed, would have failed to permit a thorough search for evidence of Defendant's crimes. And, again, in any event, the good faith exception applies.

*Third*, even if Defendant is correct that the State Warrant was not supported by probable cause and that the good faith exception does not apply, the Federal Warrant is still valid because, even with information concerning the initial examination pursuant to the State Warrant excised from the Federal Warrant affidavit, there was a substantial basis to find probable cause to support the search of Defendant's laptop and cell phone.

*Finally*, there was no "delay" in obtaining a warrant authorizing the seizure and search of Defendant's phone. Defendant's phone was held without a warrant to maintain the status quo for no more than *20 minutes* before the State Warrant—which authorized law enforcement to seize and search the phone—was obtained.

18

## ARGUMENT

## I. THE STATE WARRANT WAS SUPPORTED BY AMPLE PROBABLE CAUSE TO SEIZE DEFENDANT'S CELL PHONE AND LAPTOP

### A. Standard of Review

When reviewing a search warrant to determine if it is supported by probable cause, this Court does not conduct an independent, *de novo* review of the warrant, but merely decides whether the issuing judge had a "substantial basis" for concluding that there was a "fair probability" that contraband or evidence of a crime would be discovered in a particular place. *Illinois v. Gates*, 462 U.S. 213, 238-239 (1983). The issuing judge's findings should be afforded "'great deference'" by a reviewing court. *Id.* at 236 (citation omitted).

On appeal, the district court's legal conclusions are reviewed *de novo*, and its factual findings for clear error. *United States v. Hill*, 852 F.3d 377, 381 (4th Cir. 2017). Further, the facts are reviewed in the light most favorable to the government because it prevailed below. *United States v. Green*, 740 F.3d 275, 277 (4th Cir. 2014).

### B. Applicable Law

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the

19

place to be searched, and the persons or things to be seized." U.S. CONST. amend.

IV. This constitutional protection is realized through the requirement that a

"neutral and detached magistrate" find probable cause to support a warrant. *Gates*,

462 U.S. at 240 (internal quotation marks omitted).

The evaluation of whether a search warrant is supported by probable cause

turns first on whether the items to be seized are evidence of criminal activity, *see*

*Zurcher v. Stanford Daily*, 436 U.S. 547, 556 & n.6 (1978), and whether there is "a

sufficient nexus between the criminal conduct, items to be seized, and the place to

be searched." *United States v. Abraham*, 213 F. App'x 240, 247 (4th Cir. 2007)

(per curiam) (citing *United States v. Anderson*, 851 F.2d 727, 729 (4th Cir. 1988)).

"[T]he nexus between the place to be searched and the items to be seized may be

established by the nature of the item and the normal inferences of where one would

likely keep such evidence." *Anderson*, 851 F.2d at 729.

"[O]fficers may draw conclusions from their experience, judgment, and

observations when identifying the place to be searched." *United States v. Wienke*,

733 F. App'x 65, 69-71 (4th Cir. 2018) (per curiam) (sufficient nexus existed

between items to be seized and defendant's residence because items to be seized

were of the type typically kept at one's residence); *United States v. Lyons*, 740

F.3d 702, 723–24 (1st Cir. 2014) (officer's training-and-experience statement,

coupled with other observations, sufficiently established a nexus between money and illegal betting records and the defendant's residence); *United States v. Vanderweele*, 545 F. App'x 465, 469 (6th Cir. 2013) (per curiam) (holding that an officer's training-and-experience statement that firearms and "'related items are commonly stored' " in the owner's residence established a sufficient nexus).

Further, this Court has held "that a sufficient nexus can exist between a defendant's criminal conduct and his residence even when the affidavit supporting the warrant contains no factual assertions directly linking the items sought to the defendant's residence." *United States v. Grossman*, 400 F.3d 212, 217 (4th Cir. 2005) (citations and internal quotation marks omitted).

## C.    The Seizure of Defendant's Laptop And Cell Phone Was Supported By Probable Cause

Defendant first claims that all evidence found on the Defendant's laptop and cell phone (and the SD card within the phone) should be suppressed because the seizure of these items was not supported by probable cause.  Br. 18.  More specifically, Defendant claims:  (1) there is no indication in the State Warrant affidavit that Defendant owned a laptop; or (2) that he stored either a laptop or a phone at his home.  Br. 19.

21

The district court properly rejected this argument, concluding that there was

ample probable cause to support the seizure of Defendant's laptop and cell phone:

> The affidavit supporting the state warrant application contained, among
> other things: (1) portions of a statement from [Jane Doe] summarizing
> Grinder's alleged sexual abuse; (2) portions of a statement from Alisha
> Grinder in which she explained that Grinder orders Clonazepam from
> the Internet; (3) reason to believe Grinder had given [Jane Doe]
> Clonazepam to sedate her; and (4) text messages between Grinder and
> Alisha obtained from Alisha's phone in which Grinder referred to
> possessing illegal drugs and denied abusing [Jane Doe]. . . . By sworn
> testimony then *it was at least probable that Grinder used an Internet
> connected device to illegally purchase drugs in furtherance of the abuse
> of the [Jane Doe], (justifying the search and seizure of the computer
> and cell phone), and that Grinder used a cell phone to discuss both the
> purchase of those drugs and his alleged abuse of [Jane Doe], (justifying
> the search and seizure of the cell phone)*. In sum, the court finds no
> reason to second-guess the judge's determination, which is entitled to
> great deference. The warrant was supported by probable cause.

*United States v. Grinder*, No. CR CCB-17-226, 2018 WL 2943235, at \*3 (D. Md.

June 12, 2018) (emphasis added).

Indeed, the affidavit in support of the warrant established, among other

things, that Defendant in used an Internet-capable device such as a phone or laptop

computer to "order[] drugs via the Internet and [then] ha[d] it sent to the house."

SJA 61. It established that Defendant understood that he possessed a "Schedule 1

Narcotic" and "controlled substance that [he] bought"—*i.e.*, the same drugs that he

purchased via the Internet. SJA 62. It established that Jane Doe's mother believed

22

that Defendant had drugged the child at least once and that Jane Doe's urine had tested positive for Benzodiazepines.  SJA 62-63.  It established that Jane Doe had disclosed to her mother that the Defendant had been sexually abusing her.  SJA 61-62.  It established that Defendant used his cell phone to engage in a text message conversation messages with Alisha Grinder concerning his possession of the drugs and Jane Doe's allegations of abuse.  SJA 62.

The affidavit thus establishes an ample connection between the laptop, cell phone—and other Internet-enabled technology in the house—and the offenses at issue:  It was Defendant's *modus operandi* to drug Jane Doe using substances purchased via the Internet (whether purchased through his phone or his laptop) and then sexually abuse her.

Defendant claims that the affidavit failed to establish probable cause to believe that if Defendant "did own a computer, either that computer or his cell phone would be located at" his home.  Br. 19.

But Defendant ignores that that the affidavit noted, in light of the co-affiant's specialized training and experience in connection with sexual assault investigations, that individuals who commit such crimes—including sexual abuse of minors—"often attempt to conceal property, evidence, contraband and fruits of the crime on their person, in their vehicles, *in their residence* or employment."

23

SJA 60 (emphasis added).  And a residence is a location that often contains

electronics such as laptop computers and, when its occupant are home, cell phones.

A trained and experienced investigator's assertion that a particular type of evidence

is likely to be stored in a particular location may provide sufficient nexus between

criminal activity and the suspect's home.  *See, e.g.*, *Wienke*, 733 F. App'x at 69.

"The 'normal inferences test' of the nexus analysis starts with the general

rule that 'it is reasonable . . .  to assume that a person keeps his possession where

he resides.'"  *Id.* (quoting *Peffer v. Stephens*, 880 F.3d 256, 270 (6th Cir. 2018)).

That rule applies to computers, as computers "are objects that generally remain in

the suspect's possession after commission of the crime, and therefore it is

reasonable to believe those possessions to be stored at the suspect's residence,

absence evidence to the contrary."  *Peffer*, 880 F.3d at 272.

And, as a matter of common sense, the rule applies equally to cell phones, as

cell phones (when the owner of the phone is home), like computers, are not

ordinarily expended—like drugs would be—when used in the commission of a

crime.  *See Peffer*, 880 F.3d at 273.  Thus, it was a reasonable inference that a

computer and cell phone would be in Defendant's residence at the time of the

execution of the warrant, especially given the timing of the execution of the

24

warrant—at approximately 6 pm at the end of a work day when Defendant was likely to be home (as he ultimately was).[2]

Defendant's argument that, based on the affidavit, he left his residence and "had no immediate plans to return," Br. 19, is belied by the record. The affidavit does not state that Defendant had "no immediate plans to return" to his home. It states that Defendant: (1) left the residence on the afternoon of November 28, 2016, after being confronted by Alisha Grinder regarding Jane Doe's allegations that Defendant abused her; and (2) that Alisha Grinder "currently does not know where [Defendant] is." SJA 62.

It doesn't state that Defendant moved out. It doesn't state that Defendant told Ms. Grinder that he was never coming back. It doesn't state that he told her he was taking his belongings or his laptop or that he in fact did so. Indeed, it is unclear from the affidavit whether Defendant had in fact been back to his residence on November 28, 2016 or November 29, 2016, as it refers to text messages sent by Defendant in which "he states he is sitting *in a house* with Schedule I Narcotic sitting on his stomach." *Id.* (emphasis added) That Defendant would be at his own

---

[2] Defendant's own authority supports this principle. *See United States v. Griffith*, 867 F.3d 1265, 1273 (D.C. Cir. 2017) (characterizing as "fair" the assumption that when police execute a warrant early in the morning that the person whose phone they are seeking would be home).

home makes sense: Alisha Grinder and Jane Doe left the residence on November
28, 2016, after Jane Doe disclosed that Defendant had been abusing her. JA 458.
The affidavit in support of the warrant provided as much too. SJA 60 (on
November 28, 2016, "it was reported that Alesha [sic] was taking [Jane Doe] and
spending the night with a family member").

At bottom, the affidavit contained no information suggesting that Defendant
would not or did not simply return to his home after he left on November 28, 2016.
And indeed Defendant did just that—at the latest—just before 6 pm on November
29, 2016 returning to the residence shortly before law enforcement executed the
warrant. JA 103.

As for Defendant's contention that the warrant is overbroad because it does
not identify the particular *type* of Internet connected device that Defendant used to
purchase drugs online, this argument fails too. Indeed, this is precisely the sort of
hyper-technical reading of the warrant that is inappropriate. Further, as the district
court correctly concluded, *United States v. Williams*, 592 F.3d 511 (4th Cir. 2010),

> instructs that the item's description can rely in part on its relationship
> to specific crimes detailed in the complaint. Demanding more, such
> as that the warrant specifically name each item to be seized under the
> warrant, "would require officers possessed of incomplete knowledge
> to identify *ex ante* every item of evidence that will be relevant and the
> precise form that it will take—a plainly unrealistic expectation."

26

*Grinder*, 2018 WL 2943235, at \*4 (quoting *United States v. Dargan*, 738 F.3d 643, 648 (4th Cir. 2013)).

In *Williams*, this Court upheld a warrant that, similar to the warrant here, allowed the search of "*[a]ny and all* computer systems and digital storage media" and concluded that "[t]he particularity requirement is fulfilled when the warrant identifies the items to be seized by their relation to designated crimes and when the description of the items leaves nothing to the discretion of the officer executing the warrant." *Id.* at 519 (emphasis added); *see also United States v. Burke*, 633 F.3d 984, 992 (10th Cir. 2011) (warrant sufficiently particular where, "[a]fter listing the crime officers suspected [defendant] of committing . . . [,] the warrant called for the officers to search for and seize [particular property] as 'contraband, evidence, fruits or instrumentalities of said crime(s) . . . [;] the charge listed on the warrant is the sexual exploitation of a child . . . [,] [which] is narrow enough to meet the [F]ourth [A]mendment's requirement by bringing to officers' attention the purpose of the search"); *United States v. Jacobson*, 4 F. Supp. 3d 515, 523 (E.D.N.Y. 2014) (warrants were sufficiently particular "[b]ecause the [warrants] referenced particular crimes and used illustrative lists as a means of limiting the items to be seized").

27

Moreover, "[c]ourts consider the totality of circumstances in determining the validity of a warrant, and a key factor to be considered is the information available to the government. This principle applies when agents have reason to believe that electronic devices will be found at a location, but cannot precisely identify them"—exactly the situation here. *See United States v. Manafort*, 314 F. Supp. 3d 258, 265–66 (D.D.C. 2018) (citing *Gates*, 462 U.S. at 230) (rejecting challenge to provision of warrant that permitted agents to seize "[c]omputers or storage media used as a means to commit" the alleged offenses).

Thus, contrary to Defendant's suggestion, the fact that law enforcement did not know precisely whether Defendant purchased the drugs using a phone or a computer is irrelevant. They knew he used an "internet connected device" and, as the district court correctly concluded, that was sufficient to "justif[y] the search and seizure of the computer and cell phone." *Grinder*, 2018 WL 2943235, at *3.

Indeed, this Court's recent decision in *United States v. Bosyk*, 933 F.3d 319 (4th Cir. 2019), is instructive. There, the Court upheld a warrant authorizing the search of a residence for evidence of child pornography based on the fact that someone using the IP address associated with the residence "clicked [a] link" that, if clicked, took the user to multiple videos of child pornography. *Id.* at 325. The warrant allowed the search of the defendant's "residence and the seizure of

28

computers, digital devices, storage media, and related evidence." *Id.* at 323. And the affidavit in support of the warrant apparently did not contain information concerning (1) *who* clicked the link; (2) whether that individual owned a cell phone, computer, or other Internet-enabled device capable of clicking the link; or (3) *how* the link was clicked—*i.e.*, by an Internet-enabled phone or by an Internet-enabled-device. *Id.* at 322-26. Nevertheless, this Court concluded "that the magistrate judge had a substantial basis for finding probable cause to search" the defendant's house and, accordingly, seize the electronic devices within it. *Id.* at 330.

The same result should hold true here—particularly given the "deferential and pragmatic standard [used] to determine whether the judge 'had a substantial basis for concluding that a search would uncover evidence of wrongdoing.'" *Id.* at 325 (quoting *Gates*, 462 U.S. at 236).

Defendant relies heavily upon *United States v. Griffith*, 867 F.3d 1265 (D.C. Cir. 2017). But *Griffith* does not help him. There, officers investigating a year-old murder obtained a warrant to search for and seize "all electronic devices" found in the home owned by the suspected getaway driver's girlfriend where the defendant lived. 867 F.3d at 1269-70. The D.C. Circuit held the seizure of the devices from the home invalid because the warrant affidavit had not established probable cause

29

that the suspect even owned a cellphone—which was the lone device that the

government was seeking—much less that any such phone contained incriminating

evidence or would be found at the girlfriend's home.  *Id.* at 1271-75.

Not so here.  Investigators knew Defendant owned a cell phone and that he

used it to discuss Jane Doe's allegations of abuse.  Further, investigators knew

Defendant used an Internet-enabled device (such as a cell phone or computer) to

order drugs on the Internet.  Moreover, in contrast to evidence about a murder (as

*Griffith*), the issue here concerned child abuse, which is often recorded by the

perpetrators for later re-viewing.  Thus, here, unlike in *Griffith*, there is a

reasonable connection between the offense under investigation, and the warrant's

authorization to search electronic sources likely to contain evidence of that crime.[3]

The *Griffith* court further explained that the problems with the warrant

affidavit were compounded by the warrant's authorization to seize electronic

devices belonging to others (including the girlfriend), without any reason to

---

[3] *United States v. Holtzclaw*, No. 1:18CR46-1, 2018 WL 3128999, at *6 (M.D.N.C. June 26, 2018), cited by Defendant, merely applies *Griffith*.  *United States v. Jackson*, No. 17-20510, 2018 WL 2220277, at *5 n.2 (E.D. Mich. May 15, 2018), also relied upon by Defendant, simply cites *Griffith* too.  However, the court there ultimately *denied* the defendant's motion to suppress cell phone evidence because the defendant lacked standing, and the court ruled that his argument's concerning the purported overbreadth of the warrant were moot in light of this lack of standing.  *Id.*

believe that those devices would contain evidence related to the murder that had

happened a year earlier and where the defendant knew he was a suspect in the

crime and had ample opportunity to delete incriminating information from any

device.  867 F.3d at 1275-76.

Even as it held the warrant to seize all electronic devices invalid, however,

the court in *Griffith* recognized that warrants may authorize seizure of a "broader"

class of devices "when a reasonable investigation cannot produce a more particular

description."  867 F.3d at 1276.  The court gave as an example a scenario in which

police learn about a suspect's use of an electronic device but are not able "to

describe the specific characteristics of" that device.  *Id.*

The circumstances described in *Griffith* approximate those that the

investigators faced here.  They knew Defendant used an Internet-enabled device to

order drugs on the Internet (which he would go on to use to drug Jane Doe), but

did not know precisely what type of device—*e.g.*, phone or computer—he used to

order the drugs.  Thus, investigators could not more particularly describe those

devices at the time they sought the warrant.  The Fourth Amendment therefore did

not require the investigators to use a description more specific than the categorical

(and commonly employed) one found in the warrant.

31

Moreover, as the district court correctly noted "only Grinder, his wife, and [Jane Doe] lived in the residence identified in the affidavit and warrant. Thus, *Grinder had access to all evidence likely on his, and also on his wife's, laptop and cell phone*. The receipt of text messages [on his wife's phone] is one example of this." *Grinder*, 2018 WL 2943235, at *3 n.2 (emphasis added). Thus, Defendant's contention that the affidavit only established probable cause to believe "evidence would be found on Mr. Grinder's devices," Br. 24, is wrong.[4] It established probable cause to believe that evidence would be found on his wife's phone, as well as any other Internet-enabled devices in the house too.

### D.    The Good Faith Exception Applies

The district court went on to conclude that even if the State Warrant was not supported by probable cause, suppression was still unwarranted. *Grinder*, 2018 WL 2943235, at *5 ("In light of the preceding discussion of the warrant—that it was issued based on testimony from the Minor Victim and her mother, and that it

---

[4] *United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars & Fifty-Seven Cents ($92,422.57)*, 307 F.3d 137, 148 (3d Cir. 2002), does not help Defendant. There, the Third Circuit, turned immediately to the question of good faith and determined that the good faith exception applied and that suppression of the warrant was not justified where the defendant there claimed the warrant was overbroad. *Id.* at 152.

identified particular crimes, places, and items to be searched—law enforcement's

reliance on the state warrant as validly issued was objectively reasonable."). This

court should affirm.

Evidence obtained as a result of the execution of a search warrant that is not

supported by probable cause need not be suppressed so long as the investigators

acted in good faith. *See United States v. Leon*, 468 U.S. 897, 922-23 (1984).

Defendant asserts that the "a reasonable police officer could not have believed the

state warrant licensed seizure of the items police recovered on November 29,

2016." Not so.

This Court has held that the good faith exception applies to otherwise

deficient search warrants except in "egregious cases" such as "when 'the issuing

magistrate wholly abandon[s] his judicial role' or when the warrant issued is 'so

facially deficient—i.e., in failing to particularize the place to be searched or the

things to be seized—that the executing officers cannot reasonably presume it to be

valid.'" *United States v. Qazah*, 810 F.3d 879, 886-87 (4th Cir. 2015) (quoting

*Leon*, 468 U.S. at 922-23)). The court also held that "in the ordinary course, the

exclusion of evidence is not the proper remedy." *Id.*

No such circumstances are present here. No aspect of the affidavit or

warrant is deficient and it was not unreasonable for law enforcement to rely upon

33

in good faith. Indeed, as noted above, similar warrants have been frequently upheld by courts, including this one. *See, e.g.*, *Williams*, 592 F.2d at 520.

Further, though Defendant again hangs his hat on *Griffith* in support of his contention that the good faith exception does not apply, for all of the reasons already discussed above, *Griffith* is inapposite. Moreover, the conduct at issue— using an Internet-enabled device to order drugs that would then be use to facilitate the abuse of Jane Doe—"necessarily would involve the production of digital evidence." *United States v. Burton*, 756 F. App'x 295, 303 (4th Cir. 2018) (unpublished) (distinguishing *Griffith* and concluding that good faith exception applied to warrant authorizing seizure of electronic devices large and small where "the nature of" the criminal conduct at issue "necessarily would involve the production of digital evidence").

Accordingly, even if the State Warrant were not supported by probable cause—and it is—suppression would still be unwarranted because the good faith exception applies.

34

## II.   THE INITIAL SEARCH PURSUANT TO THE STATE WARRANT DID NOT EXCEED THE STATE WARRANT'S SCOPE

### A.     Standard of Review

"Whether a search is within the scope of a warrant is a question of law subject to de novo review.  In conducting such a de novo review, [the Court is] obliged to assess the contents of a search warrant and its supporting affidavits in a commonsense and realistic fashion, eschewing technical requirements of elaborate specificity."  *United States v. Srivastava*, 540 F.3d 277, 287 (4th Cir. 2008) (citations and internal quotation marks and brackets omitted).

While Defendant's motion below raised the overbreadth of the State Warrant generally, JA 75-78, he did not argue—as he does now—that scope of the State Warrant permitted the examiner of the laptop to examine only the laptop's "browser history listing websites" and nothing else.  Br. 34.  This argument is unpreserved and therefore subject to the plain-error standard.  *See United States v. Olano*, 507 U.S. 725, 732 (1993).

35

**B.      The Initial Search Of Defendant's Laptop Did Not Exceed What Was Permitted By The State Warrant**

Defendant claims that the initial search of Defendant's laptop was invalid because it did not limit what type of data could be seized or which part of the seized computer could be searched.  Br. at 33.

However, as the district court correctly concluded, "scope of the warrant and precedent foreclose Grinder's argument."  *Grinder*, 2018 WL 2943235, at *6 ("Law enforcement was justified in forensically searching the laptop because the warrant authorized such a search, and because evidence of a drug crime, or [Jane Doe's] sexual abuse, could have been located anywhere on the laptop.").

Indeed, Defendant's argument cannot be squared with the Court's decision in *Williams*, where the Court concluded that law enforcement officers reviewing a computer pursuant to a warrant were "authorized to open and view all its files, at least cursorily, to determine whether any one falls within the terms of the warrant." 592 F.3d at 521; *see also United States v. Ulbricht*, 858 F.3d 71, 103 (2d Cir. 2017) ("'[I]t is certain that some innocuous documents will be examined, at least cursorily, in order to determine whether they are, in fact, among those papers authorized to be seized.'") (citing *United States v. Ganias*, 824 F.3d 199, 211 (2d Cir. 2016) (en banc)); *United States v. Crespo-Rios*, 645 F.3d 37, 44 (1st Cir.

36

2011) ("[I]n searching for evidence… forensic experts would have thoroughly combed through files."); *United States v. Richards*, 659 F.3d 527, 538 (6th Cir. 2011) (concluding that if "the computer search is limited to a search for evidence explicitly authorized in the warrant, it is reasonable for the executing officer to open various types of files located in the computer's hard drive to determine whether they contain such evidence"); *United States v. Burgess*, 576 F.3d 1078, 1094 (10th Cir. 2009) ("[T]here may be no practical substitute for actually looking in many (perhaps all) folders and sometimes at the documents contained within those folders, and that is true whether the search is of computer files or physical files. It is particularly true with image files.").[5]

---

[5] *United States v. Stabile*, cited by Defendant, supports the Government's position.  The portion of the opinion repeatedly cited by Defendant, Br. 28-29, 33, merely reflects part of the court's statement of the two competing interests at stake on appeal.  633 F.3d 219, 237 (3d Cir. 2011) ("On one hand, it is clear that because criminals can—and often do—hide, mislabel, or manipulate files to conceal criminal activity, a broad, expansive search of the hard drive may be required.  On the other hand, *as Stabile argues*, granting the Government a carte blanche to search every file on the hard drive impermissibly transforms a limited search into a general one.") (citation and internal quotation marks omitted) (emphasis added).

*United States v. Galpin*, 720 F.3d 436 (2d Cir. 2013), Br. 29, is inapposite.  There, the items listed in the warrant were wholly unrelated to the only offense that law enforcement had probable cause to believe the defendant had committed, the warrant thus did not "describe with adequate particularity the items to be seized by their relation to designated crimes").  720 F.3d at 450.  Similarly, *United States v. Comprehensive Drug Testing, Inc.* ("*CDT III*"), 621 F.3d 1162 (9th Cir. 2010) (en

Next, though Defendant takes issue with the fact that the examiner

discovered child pornography—including an image of Jane Doe performing

fellatio on Defendant—during his examination of the laptop, SJA 84,[6] he also

makes another complaint:  That the analyst should have conducted his examination

differently and restricted his view to activity in web browsers.  However,

Defendant chose not to make a record in the district court concerning what

methodology the forensic analyst employed during the examination of the laptop to

begin with, or precisely how, if at all, the examination could have been done

differently.  *See Stabile*, 633 F.3d at 240 n.14 ("We note that although Stabile

argues that Detective Vanadia's search methodology was overbroad, Stabile offers

no practical alternative methodology that would have protected his interests yet

still permitted a thorough search for evidence of financial crimes."); *Burgess*, 576

---

banc) (per curiam), does not support Defendant.   In *United States v. Schesso*, 730
F.3d 1040, 1049 (9th Cir. 2013), the Ninth Circuit noted that the per curiam
opinion in CDT III did not require any protocols in a computer search.  Rather, a
concurring opinion "propose [d] the protocols not as constitutional requirements
but as 'guidance,' which, when followed, 'offers the government a safe harbor.'"
*Id.* (quoting *CDT III*, 621 F.3d at 1178) (Kozinski, C.J., concurring).

[6] After discovering the images of child pornography, the examiner
suspended his examination, so that a warrant to search specifically for evidence of
child pornography could be obtained. SJA 85.

F.3d at 1095 ("Burgess complains the particular methodology used in this case was overbroad, yet he offers no alternative methodology that would protect his legitimate interests and also permit a thorough search for evidence of drug trafficking."). In other words, there is no evidence of how the web browser activity alone could have been searched by law enforcement or how any such search could have been sufficiently thorough.

This alone provides a sufficient basis for the Court to reject Defendant's challenge. As then-Judge Gorsuch put it in *United States v. Christie*:

> To undertake any meaningful assessment of the government's search techniques in this case (the *how*), we would need to understand what protocols the government used, what alternatives might have reasonably existed, and why the latter rather than the former might have been more appropriate. Unfortunately, however, that we do not have in this case. *Though Ms. Christie bore the burden of proof in her suppression proceeding, she offered little evidence or argument suggesting how protocols the government followed in this case were unreasonable or insufficiently particular, especially when compared with possible alternatives. Without more help along these lines, we simply cannot assess rationally her challenge to the government's search procedures in this case* and must leave the development of the law in this arena to future cases.

717 F.3d 1156, 1167 (10th Cir. 2013) (emphasis added). So too here.

Nevertheless, despite the lack of record concerning how the analyst proceeded with the search of the laptop, Defendant baldy claims that the only place that evidence of Defendant's sexual abuse of Jane Doe would be found on the

39

laptop "would be in the form of *browser history listing websites* from which Mr. Grinder purchased" drugs and therefore that review of any electronic data beyond the "browser history" of the laptop exceeded the scope of the warrant.  Br. at 34 (emphasis added).  This argument fails for several reasons.

*First*, it ignores that in the context of electronic evidence, "[e]ven the most conventional 'files'"—including browser history[7]—are not maintained like files in a file cabinet, in discrete physical locations separate and distinct from other files . . . They are in fact 'fragmented' on a storage device."  *United States v. Ganias*, 824 F.3d 199, 212-13 (2d Cir. 2016).  Indeed, "a good deal of the information that a forensic examiner may seek on a digital storage device (again, because it is a coherent and complex forensic object and not a file cabinet) does not even remotely fit into the typical user's conception of a 'file.'"  *Id.* (citations omitted).

*Second*, if Defendant's view were correct, then "officers possessed of incomplete knowledge" would essentially be required "to identify *ex ante* every item of evidence that will be relevant *and the precise form that it will take*—a plainly unrealistic expectation."  *United States v. Dargan*, 738 F.3d 643, 648 (4th

---

[7] Defendant provides no basis for his claim that "browser history" does not constitute a type of file or files.  Br. 35.  Nor is there any support for such a contention in the record.

Cir. 2013) (emphasis added); *see also United States v. Richards*, 659 F.3d 527 (6th

Cir. 2011) (rejecting overbreadth challenge to warrant where, among other things,

the "agents did not know how and where the [contraband] content would be stored

on the server").

Put differently, under Defendant's view, officers would be required to know

the precise form that the electronic evidence concerning Defendant's purchase of

drugs over the Internet (and his use of those drugs to drug and abuse Jane Doe)

would take.  While it may be true that, at the time of the execution of State

Warrant, one likely location of evidence concerning Defendant's criminal activity

would be in electronic records on the computer created when he used the Internet

to visit websites to purchase the drugs, it is equally to true that such evidence could

have been found in many, many other locations on the laptop too—including other

records of Internet activity, caches, cookies, "bookmarked" or "favorite" web

pages, search terms that the user entered into any Internet search engine, other

programs and applications (including programs that allow for the purchase of

goods as part of the application), and records of user-typed web addresses.

Such evidence could likewise take the form of Word documents, PDFs,

photographs, or other types of files on the laptop—for instance, a receipt for drugs

purchased online, or a list of websites where Defendant purchased the drugs, or a

PDF of an invoice, or a shipping document concerning drugs purchased online. Indeed, the State Warrant explicitly referenced evidence in the form of "invoices/receipts for mail order medications," SJA 57—precisely the type of item that could be stored as a Word document or PDF.

The same is true of photographs on the laptop, which likewise could reflect, for example, receipts for the purchased drugs or photos of the drugs themselves. What's more, the affidavit made clear that Defendant used a cellular telephone to send text messages discussing his abuse of Jane Doe and drugs.  SJA 62.  Common sense suggests that such text messages (and any photographs accompanying them) are likely to be present on the laptop too which could be synced to the cell phone or which could contain its own independent communications.  In other words, if Defendant used a phone to send relevant text messages, it provides some reasonable basis to conclude he used other electronic devices such as a laptop to do the same thing.  There is thus no basis for Defendant's conclusory assertion that data concerning Defendant's purchase of drugs on the Internet and his use of those drugs in connection with the abuse of Jane Doe "is not likely to be a file at all." Br. 43.

And Defendant's proposed alternative methodology—review of "browser history" only—is impractical and unworkable in that it would have failed to permit

a thorough search for evidence of Defendant's crimes. *See Stabile*, 633 F.3d at 240

n.14 (rejecting overbreadth challenge where defendant "offer[ed] no practical

alternative methodology that would have protected his interests yet still permitted a

thorough search for evidence of [the] crimes."); *Burgess*, 576 F.3d at 1095 (same).

*Third*, Defendant's argument ignores that a huge variety of data on a

laptop—besides simply "browser history"—are not only directly relevant to the

offenses at issue, but also are relevant to attribution and authentication, *see* Fed. R.

Evid. 901(b)(4), and knowledge and intent, *Ganias*, 824 F.3d at 215 ("Forensic

investigators may . . . seek responsive metadata about a user's activities, or the

manner in which information has been stored, to show such things as knowledge or

intent, or to create timelines as to when information was created or accessed.").

Thus, evidence of the crimes at issue, cannot be so easily cabined to simply

"browser history."

*Finally*, Defendant acknowledges the concern raised by this Court in

*Williams* that "the designation or labeling of files on a computer can easily be

manipulated to hide their substance[,]" as "the owner of a computer, who is

engaged in criminal conduct on that computer, will not label his files to indicate

their criminality." *Williams*, 592 F.3d at 522 (collecting cases); *Crespo-Rios*, 645

F.3d at 44 (discussing the ways in which digital files may be mislabeled).  But his

43

argument ignores that the analyst here had no way of knowing precisely how the data pertinent to Defendant's crime—and his use of his computer in connection with that crime—was named or stored or whether any of that data had been manipulated by Defendant.[8]

At bottom, "[i]t has long been perfectly appropriate to search the entirety of a premises or object as to which a warrant has issued based on probable cause, for specific evidence as enumerated in the warrant, which is then to be seized." *United States v. Ulbricht*, No. 14 Cr. 68 (KBF), 2014 WL 5090039, at *14 (S.D.N.Y. Oct. 10, 2014), *aff'd*, 858 F.3d 71 (2d Cir. 2017) (approving search of entire computer for material specified in the search warrant); *Ulbricht*, 858 F.3d at 102 ("A warrant may be broad, in that it authorizes the government to search an identified location or object for a wide range of potentially relevant material, without violating the particularity requirement."). This Court held as much concerning "computers and digital media" in *Williams*. 592 F.3d at 521. Defendant's own-cited authority establishes as much too. *United States v. Loera*, 923 F.3d 907, 921 (10th Cir. 2019) ("While in some cases many (perhaps all) electronic areas of a computer will

---

[8] Defendant's reliance on *United States v. Doyle*, 650 F.3d 460 (4th Cir. 2011), is misplaced. As the district court correctly reasoned, here—unlike in *Doyle*—"the government did not set out to find child pornography but discovered it during a lawful search." *Grinder*, 2018 WL 2943235, at *6 n.6.

44

be fair game to search, the level of intensity that officers are permitted to spend

searching those areas will differ depending on whether the area appears to contain

responsive material. . . .  In all cases, the ultimate test is the one mandated by the

Fourth Amendment: whether the search was "reasonable" under the

circumstances.").[9]

The search here was reasonable, and "the observation of child pornography

within several of [the laptop's] files did not involve an intrusion on [Grinder's]

protected privacy interests beyond that already authorized by the warrant."

*Williams*, 592 F.3d at 523.  And, as the district court reasoned, it was "truly just an

observation. Once the images were discovered, the search was immediately

suspended pending a federal warrant specifically authorizing a search for child

pornography." *Grinder*, 2018 WL 2943235, at *7; SJA 10.  This fact further

underscores the reasonableness of the initial examination of Defendant's laptop.

*See, e.g.*, *Burgess*, 576 F.3d at 1094-95 (scope of search of computer seized from

---

[9] In *Loera*, the Tenth Circuit held that a second search of the defendant's
electronic data, pursuant to a warrant to search for evidence of computer fraud, was
unreasonable because it was directed at uncovering evidence of child pornography.
*See id.* at 922.  Here, of course, when the examiner reviewing the laptop
discovered images of suspected child pornography, "the search was immediately
suspended pending a federal warrant specifically authorizing a search for child
pornography."  *Grinder*, 2018 WL 2943235, at *6.

45

residence for "computer records" relating to drugs and drug trafficking pursuant to warrant did not violate Fourth Amendment because, among other reasons, investigator immediately suspended search and obtained a second warrant after discovering an image of child pornography on the computer); *Loera*, 923 F.3d at 907-08.

### C.     The Good Faith Exception Applies

In any event, even if Defendant is correct that the initial examination exceeded the scope of the State Warrant—and he is not—suppression is still nevertheless unwarranted because the good faith exception applies.

The purpose of the exclusionary rule is to deter police misconduct and "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further" that purpose. *Leon*, 468 U.S. at 918. "Where an officer acting with objective good faith obtains a search warrant from a detached and neutral magistrate and the executing officers act within its scope, there is nothing to deter." *Burgess*, 576 F.3d at 1095 (citation omitted).

There is no conduct worthy of deterrence here. Far from it. Officers acted properly, conscientiously, and cautiously here at every turn. The State Warrant authorized the examining officer to seize from Defendant's residence evidence

46

relating to various sex abuse crimes—among other things, "invoices/receipts for mail order medications, cell phones, computers, hard drives, [and] media storage devices"—and have any such devices "forensically analyzed." SJA 57. The warrant thus "constrained the executing officers to: (1) the specified set of crimes supported by probable cause; and (2) searching and seizing particular items in particular places [including electronic device] for evidence of those crimes." *Grinder*, 2018 WL 2943235, at *4.

What's more, though the good faith standard turns on objective reasonableness, *Leon*, 468 U.S. at 924, further underscoring the investigators' good faith reliance on the State Warrant (and their recognition of its parameters) is the fact that, upon discovering child pornography during the review of Defendant's laptop, the analyst immediately suspended his search, so that the a warrant authorizing a search for child pornography could be obtained. *See, e.g.*, *United States v. Hager*, 710 F.3d 830, 838 (8th Cir. 2013) (law enforcement officer exhibit good faith reliance on initial warrant when, after discovering child pornography during search of a tape, sought a second warrant).

Moreover, all of Defendant's cited-authority is inapposite. *See United States v. Angelos*, 433 F.3d 738, 744 (10th Cir. 2006) (good faith exception did not apply where the search warrant authorized only the seizure of a safe and a car at a

47

residence, but the officers went on to search the defendant's *entire residence*);[10]

*United States v. Curzi*, 867 F.2d 36, 44 (1st Cir. 1989) (good faith exception did

not apply where officers entered a residence to search it *without a warrant*).

Thus, even assuming that the scope of the State Warrant was exceeded during

the initial examination of Defendant's laptop, suppression is still nevertheless

unwarranted because the good faith exception applies.

## III.  THE FEDERAL WARRANTS, AS EXCISED, ARE STILL SUPPORTED BY PROBABLE CAUSE

Even if this Court were to determine that the initial examination of the

laptop exceeded the scope of the State Warrant and that the good faith exception

---

[10] *United States v. Ewain*, 88 F.3d 689, 694-95 (9th Cir. 1996), dealt with the application of the plain-view doctrine and did not even discuss *Leon*.  In any event, there, the Ninth Circuit found that the district court's denial of the motion to suppress was proper.  Similarly, the Eight Circuit in *United States v. Long*, 797 F.3d 558, 567 (8th Cir. 2015), determined that the good faith exception applied in response to various assertions that a warrant granted over the telephone was deficient.  Likewise, in *United States v. Perez*, this Court reversed the district court's conclusion that the good faith exception did not apply, even though the affidavit in support of the search warrant left "much to be desired."  393 F.3d 457, 462 (4th Cir. 2004).  *Buoncore v. Harris*, 65 F.3d 65 F.3d 347 (4th Cir. 1995), did not involve the application of the good faith exception at all.

did not apply, the subsequent Federal Warrant to search Defendant's laptop and

phone for evidence of child pornography is not automatically invalidated.[11]

When a court determines that certain evidence has been improperly included

in a warrant affidavit, it must examine "the remaining content of the affidavit . . .

to determine whether there was probable cause to search[.]" *United States v.*

*Gillenwaters*, 890 F.2d 679, 681 (4th Cir. 1989) (quoting *United States v. Veillette*,

778 F.2d 899, 904 (1st Cir. 1985)).  Indeed, this Court has repeatedly emphasized

that improper or otherwise tainted evidence offered in support of a search warrant

will not invalidate the search warrant so long as sufficient information remains to

support a probable cause determination.  *United States v. Allen*, 631 F.3d 164, 172

(4th Cir. 2011) ("Even if Detective Niedermeier's initial entry into the AFA Store

was unconstitutional, the evidence seized under the First Warrant need not be

suppressed, because 'sufficient untainted evidence was presented in the [First

W]arrant affidavit to establish probable cause,' rendering the warrant valid."

---

[11] Defendant's waiver arguments are meritless.  Br. 50-51.  The Government raised this argument below.  SJA 55; JA 162-164.  Further, Defendant misunderstands that this Court may affirm for any reason in the record, including theories not even relied on below.  *See United States v. Basham*, 789 F.3d 358, 379 (4th Cir. 2015).

(quoting *United States v. Karo*, 468 U.S. 705, 719 (1984))); *accord United States v. Wright*, 991 F.2d 1182, 1186 (4th Cir. 1993).

It must be reiterated that a court reviewing the sufficiency of probable cause in a warrant affidavit must simply ensure that there is "a substantial basis for concluding that probable cause existed." *United States v. Hodge*, 354 F.3d 305, 309 (4th Cir. 2004) (quoting *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983)). Here, even with information concerning the initial examination excised from the Federal Warrant affidavit, there was a substantial basis to find probable cause to support the search of Defendant's laptop and cell phone.

Indeed, in addition to allegations of sexual abuse and the suspected drugging of Jane Doe by Defendant, SJA 81-83, the Federal Warrant affidavit establishes, among other things, that: "[Jane Doe] told her that her [Defendant] used his cell phone to videotape the [her] performing oral sex on [Defendant], and then 'put it on the TV,'" *id.* 84, and she "received a Pediatric Sexual Assault Forensic Examination at the Carroll Hospital Center, and the examining doctor noted indications of a history of sexual abuse, including the child's absence of her posterior hymen, which was diagnostic of prior penetrating trauma to the vagina," *id.* The affidavit likewise includes information—based on Agent Federico's

50

knowledge, training, and experience—concerning the profile of child pornography

offenders more generally, including that:

- "Individuals who have a sexual interest in children or images of children may receive sexual gratification, stimulation, and satisfaction *from contact with children*, . . ." SJA 78 (emphasis added);

- "Individuals who have a sexual interest in children or images of children may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media," *id.*;

- "Individuals who have a sexual interest in children or images of children often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer, external hard drive and other memory device, or cellphone, and surrounding area," SJA 79; and

- "Child pornographers can now transfer photographs from a camera onto a computer-readable format. With the advent of digital cameras, the images can now be transferred directly onto a computer," *id.*

All of this information taken together provides a more than substantial basis for the Magistrate Judge to conclude that probable cause existed to search Defendant's cell phone and laptop for evidence of child pornography.

Indeed, the affidavit established that Defendant had not only sexually abused Jane Doe repeatedly, but also *produced child pornography* by forcing Jane Doe to perform oral sex on him, filming her doing so using his phone, and then forcing her to watch his recording of the abuse "on the TV."

Defendant suggests that federal agents were aware of the allegation regarding Defendant's filming of the abuse in December 2, 2016, Br. 53, and speculates that federal investigators could have acted to get the Federal Warrants sooner than March 17, 2017, Br. 54 n.6. He is wrong.

As the affidavit in support of the Federal Warrants makes clear, it was *state and local investigators*—not federal agents—who learned of Jane Doe's statement that Defendant filmed his abuse of her with his cell phone and then "put it on the TV," SJA 84 (stating that Jane Doe's mother spoke with the "MSP," or Maryland State Police, "investigator") the same investigative entities that initially interviewed Jane Doe, SJA 81-82. Indeed, during trial, Agent Federico testified that he opened the federal investigation of Defendant on March 17, 2017 (the very

52

same day he obtained the Federal Warrant), JA 272, and that, prior to that point, the investigation was initiated and conducted by local investigators, JA 269.

Defendant's assertion that, absent information concerning the discovery of the images during the initial search, there was not probable cause to search Defendant's laptop, Br. 56-57, likewise misses the mark. Again, the affidavit in support of the Federal Warrant establishes that the Defendant used his phone to produce child pornography and then "put it on the TV." SJA 84. Common sense dictates that if Defendant played the child pornography he produced with this phone on the TV, that he also likely: (1) transferred the pornography to his other personal electronic device, such as his laptop; or (2) transferred the video from his phone to his laptop to the TV. This is particularly so in light of the fact that, as Agent Federico stated in his affidavit, individuals who have a sexual interest in children frequently store "their child pornography images in a variety of portable media" and "frequently maintain multiple computers and portable digital storage devices" to store their collections. SJA 79.

And though Defendant derides this and other statements based on Agent Federico's knowledge, training, and experience, in Agent Federico's affidavit as "boilerplate," Br. 56, Defendant's own cited-authority acknowledges the value in the probable cause inquiry of affidavits that contain "an extensive background

53

discussion of the modus operandi of those who use computers for collecting and distributing child pornography" such as the one here. *United States v. Gourde*, 440 F.3d 1065, 1072 (9th Cir. 2006) (affirming denial of motion to suppress) (citations and internal quotation marks omitted). So too has this Court. *See, e.g.*, *Bosyk*, 933 F.3d at 330 (citing *United States v. Richardson*, 607 F.3d 357, 361, 371 (4th Cir. 2010)).

Thus, even without the inclusion of information concerning the discovery of the images during the initial search of the laptop, there was still probable cause to search the laptop for child pornography, and suppression is therefore unwarranted.

## IV.   THERE WAS NO DELAY IN OBTAINING A WARRANT TO SEIZE AND SEARCH DEFENDANT'S CELL PHONE

Ignoring the existence of the State Warrant authorizing the seizure and search of Defendant's laptop and cell phone on November 29, 2016, Defendant argues that there was an "unreasonable" delay in obtaining the Federal Warrant to search the phone. Br. 59.[12]

The district court rejected this argument twice. It rejected it first in response in connection with Defendant's motion to suppress (JA 87-88). *See Grinder*, 2018

---

[12] Defendant does not challenge the seizure of the phone as he did below. *E.g.*, JA 50-51.

54

WL 2943235, at *6 n.5 ("Grinder also takes issue with the length of his phone's

seizure, . . . . But *here the cell phone was warrantlessly held by law enforcement*

*for no more than twenty minutes*.") (emphasis added).  And the district court

rejected it again in connection with Defendant's motion for reconsideration of this

ruling—made about a week before trial.  JA 311-12 (reasoning, among other things

that (1) there was a warrant "within 20 minutes"; (2) "there is no evidence of Mr.

Grinder having requested these items back in any fashion that would influence the

length of the possession of the items, any electronic devices" and (3) "if it were

necessary to get there -- again, I'm not finding that there was such a delay in

getting the federal warrant that would interfere with any possessory interest -- but

if there is any problem, I would note that the, which I didn't address the first time,

I believe the first warrant is sufficient to cover the three, even the three non-

produced images of child pornography").  This Court should rule likewise.

For starters, *United States v. Pratt*, 915 F.3d 266 (4th Cir. 2019), is

inapposite.  *Pratt* involved a warrantless seizure of a phone and then a 31-day

delay before law enforcement obtained a warrant to search the phone.  *Id.* at 269-

73.  Here, by contrast, Defendant's phone was held without a warrant to maintain

the status quo for no more than 20 minutes before officers obtained the State

Warrant—which authorized law enforcement to seize and search the phone. *See Grinder*, 2018 WL 2943235, at *6 n.5.

The State Warrant thus granted law enforcement the right to impede Defendant's possessory interest in the phone. The fact that federal law enforcement ultimately obtained a federal warrant to search for evidence related to child pornography offenses on it is irrelevant. *See United States v. Gregoire*, 638 F.3d 962, 967-68 (8th Cir. 2011) (no unreasonable delay where laptop was seized pursuant to warrant during search of home and not searched until a year later because seizure was permitted by warrant).

Cases in which defendants consented to searches and seizures are instructive. Consent is an exception to the Fourth Amendment's warrant requirement. *See Soldal v. Cook Cnty.*, 506 U.S. 56, 65-66 (1992). Both warrants and consent protect (or vitiate) Fourth Amendment rights. *Illinois v. McArthur*, 531 U.S. 326-330 (2001); *Leon*, 468 U.S. at 913-14.

Thus, the State Warrant authorizing seizure of Defendant's phone infringed on possessory interests in the same manner as consent does in other cases. *See United States v. Stabile*, 633 F.3d 219, 235 (3d Cir. 2011) ("[W]here a person consents to search and seizure, no possessory interest has been infringed because valid consent, by definition, requires voluntary tender of property."); *United States*

56

*v. Laist*, 702 F.3d 608, 612-13 & n.1 (11th Cir. 2012) (time period where defendant

consented to seizure of computer not counted in analysis of whether delay in

seeking a warrant violated rights of defendant because ); *United States v. Emanuel*,

440 F. App'x 881, 883, 885-86 (11th Cir. 2011) (per curiam) (34-day delay before

obtaining a warrant not Fourth Amendment violation because defendant consented

to seizure).

Simply put, there is no constitutional basis to distinguish between cases in

which a defendant's possessory interest is vitiated by consent and cases in which

that same interest is protected by a warrant.  If anything, a warrant confers law

enforcement with greater rights and benefits; unlike consent, a warrant requires a

showing of probable cause, is obtained with the blessing of a neutral judge, and

cannot be revoked at the will of the property owner.  Neither precedent nor

principle supports the conclusion that the government has a greater interest in

retaining the property of consenting parties than in retaining property seized on the

basis of judicially affirmed probable cause.

Further, to the extent Defendant is arguing that even if a computer is seized

pursuant to a valid warrant, "at some point" its continued retention must ripen into

a Fourth Amendment violation warranting suppression, this argument is meritless.

"The Fourth Amendment" does not place "expiration dates" on warrants, *United*

*States v. Burgess*, 576 F.3d 1078, 1097 (10th Cir. 2009), and there is no

constitutional limitation on "the duration" for which validly seized property may

be retained, *see United States v. Syphers*, 426 F.3d 461, 469 (1st Cir. 2005).

Indeed, even assuming that some outer constitutional limit proscribes the

time within which the government must obtain a search warrant after seizing a

computer or phone pursuant to a valid state warrant, that limit must be well beyond

the approximately four-month period at issue in this case. *See Christie*, 717 F.3d at

1163-64 (five month delay before obtaining warrant for computer held with

consent was "inside the bounds of constitutionally reasonable conduct, if not by a

very great margin"); *Gregoire*, 717 F.3d at 1163-64 (one year delay before search

reasonable).

Thus, when a seizure is effected with a warrant or without the need for one,

any constitutional time limit within which a search must be completed is far

beyond the limit applicable to cases involving exigent warrantless seizures—as in

*Pratt*. Because Defendant's phone was seized and possessed by law enforcement

pursuant to a valid warrant, four months comes nowhere near any outer

constitutional bound.

In any event, as the district court noted (and as Defendant conceded, JA

310), there is no evidence that Defendant ever asked for his cell phone back after

58

its seizure, further undermining his claim that his possessory interest in the cell

phone was impacted.  *See, e.g.*, *Stabile*, 633 F.3d at 235 (three-month delay was

reasonable, among other reasons, because defendant did not request return of his

hard drive until 18 months after the initial seizure); JA 227-29.

## CONCLUSION

For the reasons stated, this Court should affirm.

Respectfully submitted,

Robert K. Hur
United States Attorney

_____/s/_____
Paul A. Riley
Paul E. Budlow
Assistant United States Attorneys

October 31, 2019

## STATEMENT WITH RESPECT TO ORAL ARGUMENT

The United States respectfully suggests that oral argument is not necessary in this case.  The legal issues are not novel, and oral argument likely would not aid the Court in reaching its decision.

## CERTIFICATE OF COMPLIANCE

1.     This brief has been prepared using **Microsoft Word, Times New Roman, 14 Point.**

2.     EXCLUSIVE of the corporate disclosure statement; table of contents; table of citations; statement with respect to oral argument; any addendum containing statutes, rules, or regulations, and the certificate of service, the brief contains 12,998 words; I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.  If the Court so directs, I will provide an electronic version of the brief and/or a copy of the word or line print-out.


_____/s/_____
Paul A. Riley
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 31, 2019, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF System, which will send notice

of such filing to the following registered CM/ECF users:

Cullen Macbeth, Esq.
Assistant Federal Public Defender
Counsel to Defendant

_____/s/_____
Paul A. Riley
Assistant United States Attorney