United States Court of Appeals
for the Fourth Circuit
No. 19-4392

_____

United States,
Appellee,
v.

Eric Grinder,
Appellant.

_____

Appeal from the United States District Court
for the District of Maryland
No. 1:17-cr-00226-CCB-1

_____

**Appellant's Reply Brief**


James Wyda
Federal Public Defender

Cullen Macbeth
Assistant Federal Public Defender
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
(301) 344-0600
cullen_macbeth@fd.org

Counsel for Appellant

# Table of Contents

Argument ........................................................................................... 1

    I.   The state warrant was overbroad. .................................................. 1

        A.  The affidavit did not demonstrate probable cause to believe Grinder's cell phone and computer would be at his home. .............................................................................. 1

            1.  The affidavit indicated Grinder was not home. ................. 1

            2.  The affidavit does not establish probable cause to believe Grinder owned a computer. .................................. 5

        B.  The warrant improperly granted authority to seize all devices, regardless of ownership. ............................................. 9

        C.  The good-faith exception does not apply. ............................. 11

    II.  The search of Grinder's laptop exceeded the scope of the state warrant. ................................................................................. 13

        A.  The HSI analyst searched areas of the laptop where there was no probable cause to believe evidence would be found. ............................................................................................ 13

        B.  The good-faith exception is inapplicable. ............................. 23

    III. The federal warrants were tainted by the illegal search of the laptop. ............................................................................... 25

        A.  The government was required—but failed—to show that the initial computer search did not affect investigators' decision to seek the federal warrants. ................................. 25

        B.  The fruits of the illegal computer search affected the magistrate's decision to issue the federal computer warrant. ........................................................................................ 29

    IV. Investigators unreasonably delayed in obtaining the federal warrant for Grinder's phone. ......................................... 30

Conclusion ...................................................................................... 32

i

Certificate of Compliance ........................................................ 34

Certificate of Service .............................................................. 34

## Table of Authorities

**Federal Cases**

*Archer v. Chisholm*, 870 F.3d 603 (7th Cir. 2017) ..................................................18

*Elkins v. United States*, 364 U.S. 206 (1960) ........................................................28

*Owens ex rel. Owens v. Lott*, 372 F.3d 267 (4th Cir. 2004)...................................7

*Peffer v. Stephens*, 880 F.3d 256 (6th Cir. 2018) .................................................3, 4

*United States v. Aljabari*, 626 F.3d 940 (7th Cir. 2010) .........................................4

*United States v. Allen*, 631 F.3d 164 (4th Cir. 2011)............................................25

*United States v. Bosyk*, 933 F.3d 319 (4th Cir. 2019) ............................................7

*United States v. Burke*, 633 F.3d 984 (10th Cir. 2011) ...........................................6

*United States v. Burton*, 756 F. App'x 295 (4th Cir. 2018) .......................... 11, 12

*United States v. Dargan*, 738 F.3d 643 (4th Cir. 2013) .................................. 14, 15

*United States v. Djelilate*, 1999 WL 686896 (4th Cir. Sept. 3, 1999) .................29

*United States v. Fuccillo*, 808 F.2d 173 (1st Cir. 1987) ........................................24

*United States v. Gillenwaters*, 890 F.2d 679 (4th Cir. 1989) ...............................25

*United States v. Griffith*, 867 F.3d 1265 (D.C. Cir. 2017) ........................... 8, 9, 10

*United States v. Hill*, 776 F.3d 243 (4th Cir. 2015) ..............................................25

*United States v. Holness*, 706 F.3d 579 (4th Cir. 2013).......................................28

*United States v. Horton*, 693 F.3d 463 (4th Cir. 2012)...........................................5

*United States v. Jacobson*, 4 F. Supp. 3d 515 (E.D.N.Y. 2014) ............................6

*United States v. Kimble*, 855 F.3d 604 (4th Cir. 2017) ..........................................18

*United States v. Leon*, 468 U.S. 897 (1984)...........................................................24

*United States v. Loera*, 923 F.3d 907 (10th Cir. 2019)..........................................16

*United States v. Lyles*, 910 F.3d 787 (4th Cir. 2018) .............................................2

*United States v. Manafort*, 314 F. Supp. 3d 258 (D.D.C. 2018) ...........................7

*United States v. Norman*, 935 F.3d 232 (4th Cir. 2019) ........................................5

*United States v. Pratt*, 915 F.3d 266 (4th Cir. 2019) ...................................... 30, 31

*United States v. Robinson*, 744 F.3d 293 (4th Cir. 2014) ......................................22

*United States v. Ross*, 456 U.S. 798 (1982) ...........................................................17

*United States v. Rowland*, 145 F.3d 1194 (10th Cir. 1998) ...................................24

*United States v. Sassani*, 1998 WL 89865 (4th Cir. Mar. 4, 1998) ......................29

*United States v. Stabile*, 633 F.3d 219 (3d Cir. 2011) ...........................................31

*United States v. Ulbricht*, 2014 WL 5090039 (S.D.N.Y. Oct. 10, 2014)..............23

*United States v. Wells*, 98 F.3d 808 (4th Cir. 1996)..............................................17

*United States v. Williams*, 592 F.3d 511 (4th Cir. 2010) ..................................6, 13

*Yee v. City of Escondido*, 503 U.S. 519 (1992) ......................................................22

**Other Authorities**

LaFave, Search & Seizure: A Treatise on
  the Fourth Amendment § 11.2(b) ...................................................................21

# Argument

Grinder replies to several arguments in the government's Response Brief (RB) and continues to rely on the arguments in his Opening Brief (OB).

## I. The state warrant was overbroad.

The government erroneously contends that: (1) the state warrant affidavit established probable cause to believe Grinder owned a laptop, which, along with his cell phone, would be found at his home; and (2) the affidavit provided probable cause to seize all electronic devices in his home, regardless of ownership.

### A. The affidavit did not demonstrate probable cause to believe Grinder's cell phone and computer would be at his home.

#### 1. The affidavit indicated Grinder was not home.

Grinder's Opening Brief explained that the state affidavit strongly suggested Grinder would not be home when police obtained and executed the search warrant. OB_19-20. In response, the government notes the affidavit did not explicitly state that "[Grinder] had 'no immediate plans to return' to his home." RB_25. Nevertheless, the affidavit makes it clear Grinder was unlikely to be home.

1

According to the affidavit, Grinder left the house on the afternoon of Monday, November 28, 2016.  S.J.A._4.  It asserts Alisha and Grinder engaged in a text-message conversation "since Monday afternoon (11/28/2016) through this afternoon," i.e., the afternoon of Tuesday, November 29th, when the warrant issued.  S.J.A._4-5.  And it alleges Alisha "currently does not know where [Grinder] is."  S.J.A._4.  Given the brief (24-hour) window between Grinder's departure and the warrant application, and given the ongoing text-messaging between Grinder and Alisha, her statement that she did not then know his whereabouts strongly suggests he was not at the couple's home.[1]

The government argues the affidavit suggests Grinder had returned home because it mentions a text message he sent Alisha saying "'he [wa]s sitting *in a house* with a Schedule I Narcotic sitting on his stomach.'"  RB_25.  The affidavit's next two sentences, however, directly refute the government's suggestion: when Alisha asked Grinder to come home, he

---

[1] The government observes that Grinder in fact returned home just before 6 p.m. on November 29th.  RB_25-26.  But this information was not presented to the magistrate, *see* S.J.A._1-5, and it therefore can play no role in the probable-cause analysis.  *United States v. Lyles*, 910 F.3d 787, 791 (4th Cir. 2018).

2

responded, "Come home with a controlled substance I bought for you that I'll get in trouble for." S.J.A._4. As this response makes clear, Grinder did not intend, at least in the immediate future, to return home, because he feared he would end up in legal trouble if he did. Thus it is plain that the house in which Grinder was sitting was not the couple's home at 261 Montpelier Court.

The government does not dispute this interpretation of Grinder's text message, nor does it explain how that message is consistent with the government's assertion that "the affidavit contained no information suggesting that [Grinder] would not or did not simply return to his home after he left on November 28, 2016." RB_26. Instead, the government falls back on "the general rule that it is reasonable . . . to assume that a person keeps his possessions where he resides." RB_24. That is true as far as it goes. But *Peffer v. Stephens*, 880 F.3d 256 (6th Cir. 2018), on which the government relies, makes clear the government's "general rule" has no application here.

As *Peffer* explains, "[i]f an affidavit presents probable cause to believe that a crime has been committed by means of an object, . . . a magistrate may presume that there is a nexus between that object and the suspect's

current residence, *unless the affidavit contains facts that may rebut that presumption*." 880 F.3d at 270-71 (emphasis added); *see also, e.g., United States v. Aljabari*, 626 F.3d 940, 946 (7th Cir. 2010) ("When probable cause exists to believe an individual has committed a crime involving physical evidence, *and when there is no articulable, non-speculative reason to believe that evidence of that crime was not or could not have been hidden in that individual's home*, a magistrate will generally be justified in finding probable cause to search that individual's home." (emphasis added)).  Here, the state affidavit contained facts that "rebut th[e] presumption" on which the government relies.  *Peffer*, 880 F.3d at 271.  That affidavit quoted Grinder, who had his cell phone with him, as indicating he would <u>not</u> be returning to his home in the immediate future.  Thus there existed an "articulable, non-speculative reason to believe" that Grinder's cell phone "was not or could not have been hidden in [his] home." *Aljabari*, 626 F.3d at 946.

The same is true of Grinder's laptop, assuming he owned one.  Although the state affidavit did not say Grinder had his laptop with him when the warrant issued, it is reasonable to assume that someone who leaves his home with no immediate plans to return would take with him

important personal items like a computer, especially one containing

evidence of a serious crime.  OB_19-20.

### 2.   The affidavit does not establish probable cause to believe Grinder owned a computer.

The government does not dispute that the state affidavit provides no

basis to believe Grinder owned a computer specifically.  Rather, it

essentially asserts that whenever a suspect has accessed the internet in

connection with a crime, probable cause exists to seize any and all internet-

connected devices he owns—including a laptop that may or may not

exist—even when police know for a fact that he owns a different internet-

connected device.  The government's cited cases either are distinguishable

or do not address the overbreadth question presented in this appeal, and

are therefore irrelevant.  *See United States v. Norman*, 935 F.3d 232, 240-41

(4th Cir. 2019) (explaining that where an issue "was not raised, not argued,

and hence not analyzed" in a previous case, that case does not control);

*United States v. Horton*, 693 F.3d 463, 479 n.16 (4th Cir. 2012) ("Since we

have never squarely addressed the issue, and have at most assumed it, we

are free to address the issue on the merits.").

*First,* the government cites *United States v. Williams*, 592 F.3d 511 (4th Cir. 2010), in which this Court upheld a warrant that "allowed the search of '*[a]ny and all* computer systems and digital storage media.'" RB_27. But the *Williams* defendant did not argue the supporting affidavit failed to establish probable cause to seize "any and all" computer systems. His appeal presented only "two questions: (1) whether the government's search for and seizure of child pornography fell within the scope of the warrant's authorization; and (2) whether the evidence of child pornography was in any event properly seized under the plain-view exception to the warrant requirement." *Williams*, 592 F.3d at 519. Because *Williams* considered only the scope-of-the-warrant and plain-view questions, and not the overbreadth question, it has no bearing on this portion of Grinder's appeal.

*Second,* the government points to *United States v. Burke*, 633 F.3d 984 (10th Cir. 2011), and *United States v. Jacobson*, 4 F. Supp. 3d 515 (E.D.N.Y. 2014). RB_27. Both *Burke* and *Jacobson* resolved particularity challenges, but did not decide whether the warrants at issue were overbroad. 633 F.3d at 987-91; 4 F. Supp. 3d at 518. Overbreadth and particularity address different concerns. *Owens ex rel. Owens v. Lott*, 372 F.3d 267, 276 (4th Cir.

6

2004). Since neither *Burke* nor *Jacobson* involved an overbreadth challenge like Grinder's, those cases are immaterial.

**Third,** the government analogizes to *United States v. Bosyk*, 933 F.3d 319 (4th Cir. 2019). RB_28-29. The affidavit in *Bosyk* alleged that someone using an IP address registered to the defendant's home had clicked on a link that led to child-pornography videos. 933 F.3d at 323. The defendant argued the affidavit did not establish probable cause to seize electronic devices from his home—but only on the theory that it was not necessarily clear to the person who clicked on the link that it would take the user to child pornography. *Id.* at 326-27. He did not argue the warrant should have been limited to certain electronic devices but not others.

**Fourth,** the government relies on *United States v. Manafort*, 314 F. Supp. 3d 258 (D.D.C. 2018). RB_28. *Manafort* upheld, against an overbreadth challenge, a warrant permitting police to seize from the defendant's home "computers, electronic devices, and storage media (such as hard disks or other media that can store data)." 314 F. Supp. 3d at 262. The affidavit, however, specifically alleged that the defendant (1) used his home office to conduct business related to the offenses under investigation; (2) "used a *Mac desktop computer* in his home office"; (3) "frequently stored

7

historical and current records on *external hard drives, thumb drives, and magnetic disks*"; and (4) "made widespread use of *electronic media* in the course of his business activity." *Id.* at 261-62 (emphasis added). Thus the affidavit provided specific reason to believe the defendant owned and used each of the kinds of devices described in the warrant. The state affidavit in this case did not do the same.

*Fifth,* the government attempts to distinguish *United States v. Griffith*, 867 F.3d 1265 (D.C. Cir. 2017), on the ground that, unlike in *Griffith*, police in this case knew Grinder "used an Internet-enabled device (such as a cell phone or computer)" in the commission of a crime. RB_30. This is beside the point. Although the state affidavit demonstrated Grinder possessed some kind of internet-connected device, it provided absolutely no basis to believe that device was a computer, rather than, for instance, the cell phone police knew he possessed. *Griffith* is therefore on point. *See* 867 F.3d at 1272 ("[T]he affidavit provided no reason to suppose that Griffith possessed [electronic devices apart from cell phones] or that any would be found in the apartment.").

The government also claims *Griffith* is inapposite because child abuse, unlike murder, "is often recorded by the perpetrators for later re-viewing."

8

RB_30. The government offers no authority for this highly debatable contention. But even if it is true, it does nothing to suggest Grinder owned a computer. People can, and do, create and save videos and photographs on their phones—a device Grinder was known to possess. Their doing so in no way establishes that those people own computers, too.

### B. The warrant improperly granted authority to seize all devices, regardless of ownership.

Grinder's Opening Brief argued the state warrant was overbroad because it authorized police to seize any and all electronic devices "without regard to ownership." OB_24. The government's responses are unavailing.

*First,* the government cites *Griffith* for the proposition that "warrants may authorize seizure of a 'broader' class of devices 'when a reasonable investigation cannot produce a more particular description.'" RB_31. This argument omits key language from *Griffith*:

> There may be circumstances in which police have probable cause to seize a phone, yet still lack specific information about the phone's *make or model*. For example, police might learn a suspect uses a phone through an informant, and thus have no ability to describe the *specific characteristics of any phone* belonging to him.

867 F.3d at 1276 (emphasis added). As this passage makes clear, *Griffith* envisions cutting police some slack when they know the particular category of device a suspect possesses (e.g., a phone), but cannot provide more "specific characteristics" such as "make and model." *Griffith* does not say a warrant may leave out crucial, and basic, information such as the identity of the phone's owner.

And in any event, *Griffith* explains that even when a more particular description is impossible, a warrant still may not "confer a blanket authorization to search for and seize all electronic devices," regardless of ownership. *Id.* Instead, the impossibility of greater specificity simply means that, when officers are executing the warrant, "some innocuous devices would need to be examined, at least cursorily, to determine their relevance to the investigation." *Id.* If that cursory examination reveals the devices to be "unrelated to the crime" under investigation, the warrant would not authorize their seizure. *Id.* at 1277.

***Second,*** the government contends the affidavit "established probable cause to believe that evidence would be found on [Alisha's] phone." RB_32. The affidavit suggests, however, that Alisha, who had her phone with her, was not at the house, thereby severing the nexus between

10

Alisha's phone and the home. *See* S.J.A._2 ("[I]t was reported that Alesha was taking [Jane Doe] and spending the night with a family member.").

And even if the affidavit established probable cause as to all <u>cell phones</u> in the house, it did not make a similar showing with respect to all <u>computers</u>. The affidavit gave no reason to believe that Alisha's computer, if she owned one, contained evidence of Grinder's sexual abuse. With respect to computers, therefore, the warrant "far outstripped the police's proffered justification for entering the home—viz., to recover any devices owned by [Grinder]." *Id.* at 1276.

## C.    The good-faith exception does not apply.

The government's good-faith argument relies on this Court's unpublished opinion in *United States v. Burton*, 756 F. App'x 295 (4th Cir. 2018). RB_34. In that case, the defendant admitted to police that he had tried to take an "up-skirt" photo of a complaining witness with his cell phone, and had in fact taken such photos of other women. 756 F. Appx' at 297-98. The police searched two of the defendant's cell phones but found no photos of the complainant. *Id.* at 297. Officers then obtained a warrant to search the defendant's home for "[t]he entire contents" of "any computer, computer related storage devices to include flashdrives,

11

memory devices, external hard drives, cameras, cell phones, [and] laptops." *Id.* at 298. This Court upheld the search under the good-faith exception because (1) officers knew the defendant "had a laptop with him" when he tried to photograph the complainant, and (2) officers "had not recovered photos of [the complainant] directly from the phones," so they "reasonably could have believed that the evidence had been transferred to a file in an electronic device, or electronic storage device, located in [the defendant's] home." *Id.*

*Burton* is not on point. Unlike in *Burton*, police here did not know Grinder owned a computer. And, because they had not searched Grinder's phone, they had no reason to believe any internet-related evidence had been moved from his phone to another device. The officers in *Burton* also had no information demonstrating the devices in question would not be in the suspect's house, as officers in this case did. Finally, *Burton* did not address the second overbreadth argument Grinder makes here: that the state warrant was overbroad because it permitted seizure of all devices, regardless of ownership. *Burton* therefore does nothing to establish good faith in this case.

12

II.   **The search of Grinder's laptop exceeded the scope of the state warrant.**

A.   **The HSI analyst searched areas of the laptop where there was no probable cause to believe evidence would be found.**

The government contends that anytime a computer has been used in connection with a crime, officers searching the computer pursuant to a warrant may examine any and every kind of data, in any and every location, even if the supporting affidavit provides no reason whatsoever to believe that a particular type of data, stored in a particular location, will contain evidence of a crime.  RB_36-46.  Therefore, the government insists, agents could search Grinder's laptop from top to bottom, notwithstanding that the state affidavit established only a single link between an internet-connected device and sexual abuse: the allegation that Grinder ordered drugs online.  The government's arguments do not support this astonishingly broad assertion of authority.

*First,* the government maintains that the narrower search proposed by Grinder is inconsistent with *Williams*.  RB_36.  But as Grinder's Opening Brief explained, *see* OB_40-41, the affidavit in *Williams* established probable cause to believe particular files ("images and texts describing sexual interaction with minors and child erotica") would be found on the

13

defendant's computer, and the warrant specifically authorized police to seize those files. 592 F.3d at 515, 520. The affidavit in this case did not identify, or even implicitly allude to, any particular electronic files, and the warrant did not expressly authorize their seizure. Allowing police to search *all* of a computer's files in a situation like this—where the warrant and affidavit do not suggest the computer will contain *any* files constituting evidence of a crime—would conflict with basic tenets of Fourth Amendment law. OB_41-44.

 ***Second,*** the government contends a narrower search would require police "'to identify ex ante every item of evidence that will be relevant *and the precise form that it will take*—a plainly unrealistic expectation.'" RB_40 (quoting *United States v. Dargan*, 738 F.3d 643, 648 (4th Cir. 2013)). The warrant in *Dargan* authorized police to search a suspect's home for, inter alia, "'indicia of occupancy, residency, of the premises . . . including but not limited to, utility and telephone bills, and canceled envelopes.'" 738 F.3d at 648. When officers seized a receipt from the home, the defendant argued it fell outside the warrant's scope. *Id.* at 647. This Court disagreed, holding that although a receipt is not a utility bill, telephone bill, or "canceled envelope," it qualifies as an indicium of occupancy. *Id.*

14

The government's citation to *Dargan* might have some force if, for example, the warrant and affidavit in this case permitted a search for "visits to websites of pharmacies selling Clonazelam, including but not limited to CVS and Walgreens," but the government instead seized evidence of a trip to the Rite-Aid website.  In that case, the warrant's failure to list Rite-Aid "by name," *id.* at 648, would be unimportant.  But *Dargan* does not say that when determining the scope of a warrant, courts should sweep in whole categories of evidence that the warrant and the affidavit do not contemplate at all.  It does not say, in other words, that police may seize "indicia of occupancy" even if the warrant permits police to search a home only for "firearms and controlled substances."

Thus limiting the computer search to browser history does not impose on investigators a requirement to predict "the precise form that [evidence] will take." *Id.* at 648.  Rather, consistent with *Dargan*, it merely restricts them to searching for the general category of evidence for which the affidavit provided probable cause.

*Third,* the government speculates that evidence of Grinder's drug purchases "could" take the form of "Word documents, PDFs, photographs, or other types of files"—for example, "a PDF of an invoice," a "list of

websites where [Grinder] purchased the drugs," or photos of "receipts for the purchased drugs or . . . the drugs themselves." RB_41-42. But "[d]etermining whether a search exceeds the scope of its authorizing warrant is . . . an exercise in reasonableness assessed on a case-by-case basis," *United States v. Loera*, 923 F.3d 907, 916 (10th Cir. 2019), and is not "reasonable" to believe such files would be found on Grinder's laptop.

Online shoppers rarely, if ever, download invoices for their purchases. To the extent an internet purchaser has a digital invoice, it is almost certainly in the form of an email, not a PDF stored on his computer. It is equally unreasonable to assume Grinder took a photo of an online receipt, since that is not the type of thing people typically do. Likewise, it is unreasonable to assume Grinder keeps a list of websites where he purchases drugs to use in furtherance of sexual abuse. Creating lists of that type is not normal human behavior, and hypothesizing the existence of such a list is more fanciful than reasonable.[2]

---

[2] The government notes that the state warrant "explicitly referenced evidence in the form of 'invoices/receipts for mail order medications.'" RB_42. The warrant, however, listed this category of evidence *in addition to*

To be sure, evidence of Grinder's drug purchases "could" take the form of the files the government imagines. RB_41-42. But "[t]he scope of a lawful search is defined by the object of the search and the places in which there is probable cause to believe that it may be found." *United States v. Wells*, 98 F.3d 808, 810 (4th Cir. 1996). The government cannot evade this limitation by defining "the object of the search" so broadly that it encompasses any and all items that "could" exist, even if there is no evidence to suggest—and it is unreasonable to assume—that they actually do exist. Relying on far-fetched hypotheticals is not reasonable.

The Supreme Court has said that "probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom." *United States v. Ross*, 456 U.S. 798, 824 (1982). On the government's view, however, police who believe a lawnmower is in a garage may in fact search the upstairs bedroom because that bedroom

---

"computers," S.J.A._6; thus it plainly referred to hard-copy invoices and receipts that were separate from the contents of any computers. This makes sense. Packages delivered from online retailers contain paper receipts in the vast majority of cases—perhaps all of them. It would therefore be unsurprising to find such receipts in Grinder's home. By contrast, online purchases virtually never generate PDFs of receipts, so there is no reason to expect to find one on Grinder's computer.

"could" contain a photo of the lawnmower.  Never mind that there is

absolutely no reason to believe such a photo actually exists—the crucial

fact, according to the government, is that it "could."  Likewise, "if you are

looking for an adult elephant, searching for it in a chest of draw[er]s is not

reasonable." *Archer v. Chisholm*, 870 F.3d 603, 617 (7th Cir. 2017).  But the

government apparently believes a search of the chest would be reasonable

after all because it "could" reveal a list of websites where the suspect buys

elephant food, or receipts reflecting those purchases.

If the government were right, the limits described in *Ross* would be

no limits at all.  This Court should decline the government's invitation to

convert all computer searches into "general, exploratory rummaging[s] in a

person's belongings." *United States v. Kimble*, 855 F.3d 604, 610 (4th Cir.

2017).

*Fourth,* the government posits several other types of evidence that

could have been located on Grinder's computer, e.g., "other records of

Internet activity," "'bookmarked' or 'favorite' web pages," and "search

terms that the user entered into any Internet search engine."  RB_41.  It is

not necessarily unreasonable to believe some of these types of evidence,

such as terms entered in a search engine, might exist.  But the government

offers no reason to believe that such evidence would be reduced to files—

much less files of the type that, if opened by the HSI analyst, would bring

his discovery of child pornography within the plain-view exception.

Absent some affirmative evidence, this Court should not assume—contrary

to everyday, common-sense understandings of how computers work—that

typing search terms in Google or Safari generates a Word document, PDF,

photograph, or other file that is saved to a computer.[3]

*Fifth,* the government argues Grinder's text messages to Alisha "are

likely to be present on the laptop too which could be synced to the cell

phone or which could contain its own independent communications."

RB_42.  Of course Grinder's cell phone "could" be synced to his laptop, and

of course the laptop "could" contain an application that he used to send

text messages.  But the affidavit contains absolutely no facts to support

such conjecture, and contrary to the government's position, these are not

---

[3] The government accuses Grinder of "provid[ing] no basis for his claim that 'browser history' does not constitute a type of file or files." RB_40.  This Court may rely on common sense in resolving Grinder's claim.  If the government wants this Court to accept the counterintuitive notion that "browser history" is a kind of "file," it should come forward with evidence to support that assertion.  It cannot transform a dubious proposition into the law simply by noting that the proposition has not been disproven.

the type of "common sense" inferences that a court may reasonably make. There is no reason to believe most people—or even a sizeable minority— sync their cell phones to their laptops or send text messages through their computers.

*Sixth,* the government faults Grinder for not "mak[ing] a record in the district court concerning what methodology the forensic analyst employed during the examination of the laptop to begin with, or precisely how, if at all, the examination could have been done differently." RB_38. The only part of the laptop it was reasonable to search for evidence of drug purchases was the browser history. To the extent the government disputes that the child-pornography files in this case were not found there, that contention is plainly meritless. This Court does not need expert testimony to understand that someone examining Google Chrome's search history is not going to stumble across photo or video files. Nor is expert testimony required to establish that it is possible to search "web browser activity alone," i.e., to search a web browser's history without also rifling through a computer's Word documents, PDFs, or PowerPoint files. RB_39. Given the obviousness of these propositions, there was no need for Grinder to "make a record."

20

Insofar as this Court believes Grinder's claim cannot be resolved without a record of the HSI analyst's methodology or how the search "could have been done differently," the burden to create such a record should fall on the government, not Grinder. As "a matter of policy" in Fourth Amendment suppression cases, "[i]t is more efficient to place the burden of production upon the party who ordinarily has most ready access to the persons who know the relevant facts." LaFave, Search & Seizure: A Treatise on the Fourth Amendment § 11.2(b). In a case that turns on the particulars of a government analyst's computer search, that party is the government. It would therefore make little sense to allocate the burden of "making a record" to Grinder.

If this Court concludes Grinder bore the burden below but failed to make a sufficient showing, it should remand for additional fact-finding. It was unclear, at the time of the suppression litigation in this case, who bore the burden of proving that a computer search either does or does not exceed the scope of a warrant. This Court has never addressed that question, and it would be unfair to penalize Grinder for failing to put on evidence he did not know he was required to present.

The government also cites cases suggesting a defendant cannot prevail on a computer-search suppression motion if he "offers no alternative [search] methodology that would protect his legitimate interests and also permit a thorough search for evidence." RB_39. But Grinder has in fact offered such a methodology: the HSI analyst could have searched the history of the laptop's web browsers.[4]

**Seventh,** the government argues data other than browser history are "relevant to attribution and authentication," as well as "knowledge and intent." RB_43. The government makes no effort to support this contention. It does not say which non-browser-history "data" it has in

---

[4] The government contends Grinder's scope-of-the-warrant claim "is unpreserved and therefore subject to the plain-error standard." RB_35. The government does not elaborate this argument, however, and for good reason. In his motion, Grinder argued the HSI analyst's "forensic search of the contents of the Toshiba laptop was [not] within the scope of the [state] search warrant." J.A._55. That warrant, he explained, could not properly "authoriz[e] an unlimited forensic analysis of all digital files contained on [the laptop]." J.A._56.

It is true that Grinder's motion did not specifically argue that the only part of the computer investigators could search was the browser history. But this fact is irrelevant. "Once a federal claim is properly presented, a party can make any argument in support of that claim [on appeal]; parties are not limited to the precise arguments they made below." *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992). Grinder "properly presented" his scope-of-the-warrant claim in district court, and he is therefore entitled to support it on appeal with the browser-history argument. *See also United States v. Robinson*, 744 F.3d 293, 300 n.6 (4th Cir. 2014).

22

mind.  Nor does it explain what evidence those unspecified data could be used to authenticate, or what type of knowledge and intent they could prove.  The government's conjecture is entitled to no weight.

*Eighth,* the government asserts "'it has long been perfectly appropriate to search the entirety of a premises or object as to which a warrant has issued.'"  RB_44 (quoting *United States v. Ulbricht*, 2014 WL 5090039, at *14 (S.D.N.Y. Oct. 10, 2014)).  But as the Second Circuit explained in the *Ulbricht* appeal, this principle is subject to an important limitation: "a warrant may allow the government to search a [suspect's] entire home *where there is probable cause to believe that evidence relevant to [criminal] activity may be found anywhere in the residence*."  *United States v. Ulbricht*, 858 F.3d 71, 102 (2d Cir. 2017) (emphasis added).  If police lack probable cause to believe evidence may be found "anywhere" in the residence, they not search everywhere.  Rather, they may search only in those places where the object of the search is likely to be found.

### B.    The good-faith exception is inapplicable.

The government does not contest the general rule that "the *Leon* good faith exception will not save an improperly executed warrant."  OB_46.  Instead, it simply attempts to distinguish factually the cases cited in

Grinder's Opening Brief. RB_47-48. But regardless of whether the rule applies in a particular case, *Leon* itself makes clear that the good-faith exception is inapplicable where officers search beyond "those places and[] those objects that it was reasonable to believe were covered by the warrant." 468 U.S. 897, 918 n.19 (1984); *see also, e.g., United States v. Rowland*, 145 F.3d 1194, 1208 n.10 (10th Cir. 1998); *United States v. Fuccillo*, 808 F.2d 173, 177 (1st Cir. 1987) (holding good-faith exception inapplicable unless police "act within the scope of the warrants and abide by their terms").

The government also notes that, upon discovering child pornography, the HSI analyst suspended his search pending a follow-up warrant. RB_47. But this does not change the fact that the analyst was searching beyond the scope of the warrant in the first place. The government identifies no authority holding the good-faith exception applicable where police exceed the scope of a warrant and then use illegally discovered evidence to obtain a warrant for the locations where they should not have been searching to begin with.

**III.    The federal warrants were tainted by the illegal search of the laptop.**

**A.    The government was required—but failed—to show that the initial computer search did not affect investigators' decision to seek the federal warrants.**

Grinder's Opening Brief explained that when execution of a search warrant follows an illegal search of the same location, "the evidence recovered in the later search is not admissible unless the government establishes that no information gained from the illegal search affected either [1] the law enforcement officers' decision to seek a warrant or [2] the magistrate's decision to grant it."  OB_49.  Without directly disputing this rule, the government implies it need satisfy only the second of these prongs—but not the first.  RB_49-50.

This Court has held, however, that "where the facts call into question whether an illegal search affected an officer's decision to seek a warrant, the district court should consider both [] prongs when evaluating whether the independent source doctrine applies."  *United States v. Hill*, 776 F.3d 243, 252 (4th Cir. 2015).  *Hill* specifically distinguished the cases on which the government relies—*United States v. Gillenwaters*, 890 F.2d 679 (4th Cir. 1989), and *United States v. Allen*, 631 F.3d 164 (4th Cir. 2011)—by noting that in those cases the Court "had no reason to question whether earlier illegal

25

activity prompted the officer's decision to seek a warrant because the defendants did not contest it." *Id.* at 252 & n.5.

Here, the facts "call into question" whether the initial computer search affected investigators' decision to seek the federal warrants, and Grinder "contest[ed]" that issue below. OB_49-56. The government was therefore required to satisfy both prongs. Because it made no attempt below to carry its burden on the first prong, the government has waived its right to argue the independent-source doctrine applies.

The government claims it did raise this issue in district court. RB_49. That is inaccurate. Although the government argued below that the <u>second</u> prong was met, J.A._162-64, S.J.A._55-56, it never argued the <u>first</u> prong was satisfied. Indeed, the government expressly disclaimed its obligation to show that the illegal computer search did not affect investigators' decision to seek the federal warrants. J.A._163-64.

The government argues, in the alternative, that "this Court may affirm for any reason in the record, including theories not even relied on below." RB_49. But because the government chose to present no evidence relating to the first independent-source prong, nothing in the record demonstrates investigators would have sought the federal warrants absent

26

the initial computer search.  Indeed, even on appeal the government does not try to show that the first prong is met.

The only argument the government makes that even tangentially relates to the first prong is its observation that Alisha informed state investigators—not federal investigators—that Grinder allegedly filmed his abuse of Jane Doe.  RB_52-53.  This is irrelevant.  The government does not deny that, from December 2, 2016, when state investigators learned of the filming allegation, until March 17, 2017, when Agent Federico formally opened his federal investigation, no one in state law enforcement sought a warrant for the computer.  Had state agents sought a warrant on March 17th—the day after Jane Doe's aunt identified a picture of her from the laptop, but three-and-a-half months after Alisha reported the filming allegation—there is no question the government would be unable to show that evidence from the initial computer search did not affect the decision to seek the warrant.

The government cannot get around this conclusion, which would render the federal warrant invalid, by claiming the investigation transformed from a state operation into a federal one on March 17th.  For one thing, the investigation was a joint state-federal enterprise from the

27

start. The analyst who conducted the first search of the computer on December 19, 2016, worked for HSI—a division of the federal Department of Homeland Security. And Agent Federico's affidavit repeatedly relies on information he received from state investigators. *E.g.*, S.J.A._84-85 ("The MSP investigator informed me that . . ."); S.J.A._86 (same).

More important, even if the government's supposed state-federal divide were real, it would not affect the Fourth Amendment analysis. The Supreme Court long ago rejected the "silver platter doctrine," which permitted the admission, in federal court, of evidence illegally seized by state law enforcement. *Elkins v. United States*, 364 U.S. 206, 208 (1960). That doctrine, the Court held, "implicitly invites federal officers . . . at least tacitly to encourage state officers in the disregard of constitutionally protected freedom, providing an inducement to subterfuge and evasion with respect to federal-state cooperation in criminal investigation." *United States v. Holness*, 706 F.3d 579, 591 (4th Cir. 2013). The same dynamic would obtain here if, knowing their own warrant application would not pass constitutional muster, state agents could simply hand the case over to federal investigators, thereby rendering inadmissible evidence admissible.

**B.    The fruits of the illegal computer search affected the magistrate's decision to issue the federal computer warrant.**

The government contends Agent Federico's affidavit, if stripped of all reference to the illegally seized images, still establishes probable cause to search Grinder's computer.  RB_53.  This argument relies entirely on the affidavit's boilerplate allegation that individuals with a sexual interest in children "store their child pornography images in a variety of portable media" and "frequently maintain multiple computers and portable digital storage devices" to store their collections.  S.J.A._79.

This Court has said "the use of profiles, *in conjunction with other evidence*, to establish probable cause is allowable" in child-pornography investigations.  *United States v. Sassani*, 1998 WL 89865, at *3 (4th Cir. Mar. 4, 1998) (unpublished) (emphasis added); *see also United States v. Djelilate*, 1999 WL 686896, at *3 (4th Cir. Sept. 3, 1999) (unpublished) (same).  But apart from the profile information, Agent Federico's affidavit contained no other evidence relevant to probable cause to search Grinder's computer. (The government does not dispute that Jane Doe's November 2016 statements to law enforcement and the results of the December 2016 medical exam are irrelevant to this question.)  That affidavit therefore

29

failed to establish probable cause, and the second independent-source

prong is not satisfied.

## IV. Investigators unreasonably delayed in obtaining the federal warrant for Grinder's phone.

In arguing that the nearly four-month delay in seeking the federal

warrant was reasonable, the government assumes that (1) Grinder's phone

was properly seized pursuant to the state warrant, and therefore (2) police

actually delayed only 20 minutes before obtaining a warrant.  RB_54-58.

As explained above and in Grinder's Opening Brief, the state affidavit did

not establish probable cause to seize the phone.  Because officers' seizure of

the phone was warrantless, both of the government's assumptions are

erroneous.

The government does not contend that, if the state warrant did not

authorize seizure of the phone, it was reasonable to wait almost four

months to seek the federal warrant.  Nor could it.  Under *United States v.

Pratt*, 915 F.3d 266 (4th Cir. 2019), a delay of over three-and-a-half months

was plainly unreasonable.  OB_59-61.

The government suggests in passing that Grinder cannot raise an

unreasonable-delay claim because "there is no evidence that [he] ever

30

asked for his cell phone back after its seizure." RB_58-59. The government cites no Fourth Circuit case holding a defendant's failure to request return of his property is relevant to, much less determinative of, the unreasonable-delay analysis. Nor does it identify any mechanism through which Grinder could have sought return of his phone from state police.[5]

And even if failure to use such a hypothetical mechanism were relevant, it would still constitute only one factor to be weighed in "balanc[ing] the government's interest in the seizure against [Grinder's] possessory interest in the [phone]." *Pratt*, 915 F.3d at 271; *see United States v. Stabile*, 633 F.3d 219, 235-26 (3d Cir. 2011) (treating lack of request as one factor among many). The government has never explained what interest it had in holding the phone for four months, or how that interest outweighed Grinder's obvious interest in regaining control of his phone.

---

[5] Below, the government argued Grinder should have filed a motion under Federal Rule of Criminal Procedure 41(g). J.A._227-28. Grinder pointed out in response that there is no authority suggesting defendants can use the <u>federal</u> rules to request the return of property from <u>state</u> law enforcement authorities acting pursuant to a <u>state</u> court warrant. J.A._236. Given that reality, the government no longer maintains Rule 41 was available to Grinder.

## Conclusion

Grinder respectfully requests this Court vacate his convictions and
remand with instructions to grant his motion to suppress.


>James Wyda
>Federal Public Defender
>Cullen Macbeth
>Assistant Federal Public Defender
>6411 Ivy Lane, Suite 710
>Greenbelt, MD 20770
>(301) 344-0600
>
>
>/s/ Cullen Macbeth
>Cullen Macbeth

## Certificate of Compliance

1. This brief has been prepared in Microsoft Word using 14-point, proportionally spaced, serif typeface.

2. Excluding the items identified in Federal Rule of Appellate Procedure 32(f), this brief contains 6,486 words.

/s/ Cullen Macbeth
Cullen Macbeth
Assistant Federal Public Defender

**Certificate of Service**

I certify that on December 18, 2019, I electronically filed the foregoing

brief with the Clerk of Court using the CM/ECF system, which will send

notice of such filing to the following registered CM/ECF users: Paul

Budlow and Paul Riley, Assistant U.S. Attorneys, Office of the U.S.

Attorney, 36 South Charles Street, 4th Floor, Baltimore, MD 21201.


/s/ Cullen Macbeth
Cullen Macbeth
Assistant Federal Public Defender